IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MEERA SALAMAH | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-cv-00477-D |
| | § | |
| UT SOUTHWESTERN HEALTH SYSTEMS; | § | |
| UNIVERSITY OF TEXAS SOUTHWESTERN | § | |
| MEDICAL CENTER, ANGELA MIHALIC, M.D., | § | |
| KEVIN KLEIN, M.D. | § | |
| Defendant. | § | |

---

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
## FIRST AMENDED COMPLAINT

---

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Ralph Molina
Deputy First Assistant Attorney General

James Lloyd
Deputy Attorney General for Civil
Litigation

Kimberly Gdula
Chief-General Litigation Division

**Mary B. Quimby**
Texas Bar No. 24132506
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.:(512) 463-2120
Fax:(512) 320-0667
Mary.Quimby@oag.texas.gov

*Counsel for Defendants- The University of Texas Southwestern Medical Center, Angela Mihalic, M.D., and Kevin Klein, M.D.*

TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iii

I.    INTRODUCTION ..................................................................................................... 1

II.   FACTUAL BACKGROUND .................................................................................... 2

III.  STANDARD OF REVIEW ........................................................................................ 4

   A.   Motion to Dismiss under Rule 12(b)(1) ............................................................ 4

   B.   Motion to Dismiss under Rule 12(b)(6) ............................................................ 5

IV.   LAW AND ARGUMENT ........................................................................................... 6

   A.   Defendants are entitled to dismissal of Plaintiff's § 1983 claim due
        to lack of subject matter jurisdiction. ............................................................ 6

      1.   Defendants have sovereign immunity from Plaintiff's § 1983 claim. ..................... 6

      2.   The *Ex parte Young* exception does not apply because Plaintiff has
           not alleged a legally cognizable due process claim or shown that
           Drs. Mihlaic or Klein were responsible for any due process issue. ................... 7

   B.   Plaintiff has not pled a legally cognizable due process claim. ................................ 8

   C.   Plaintiff has not pled a legally cognizable disability discrimination
        claim under the ADA or Rehabilitation Act. ......................................................... 12

      1.   Plaintiff was not qualified to continue in the program. ..................................... 14

      2.   Plaintiff does not allege that UTSW intentionally discriminated
           against her. ................................................................................................. 16

CONCLUSION .................................................................................................................... 17

CERTIFICATE OF SERVICE ............................................................................................. 18

TABLE OF AUTHORITIES

**Federal Cases**

*Aragona v. Berry*,
    No. 3:10-CV-1610-G, 2012 WL 467069 at *5 (N.D. Tex. Feb. 14, 2012) ....................... 10, 13

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009) .......................................................................................................... 5

*Bd. of Curators of Univ. of Mo. v. Horowitz*,
    435 U.S. 78 (1978) .................................................................................10, 11, 13, 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 5

*Block v. Tex. Bd. of Law Exam'rs*,
    952 F.3d 613 (5th Cir. 2020) ....................................................................................... 12, 15

*Cadena v. El Paso Cnty.*,
    946 F.3d 717 (5th Cir. 2020) ............................................................................................ 12

*City of Austin v. Paxton*,
    943 F.3d 993 (5th Cir. 2019) ......................................................................................... 6, 7

*Daniel v. Univ. of Tex. Sw. Med. Ctr.*,
    960 F.3d 253 (5th Cir. 2020) .............................................................................................. 6

*Davis v. Mann*,
    882 F.2d 967 (5th Cir. 1989) ........................................................................................... 10

*Delano-Pyle v. Victoria Cty.*,
    302 F.3d 567 (5th Cir. 2002) ........................................................................................... 12

*Doe v. Taylor Indep. Sch. Dist.*,
    15 F.3d 443 (5th Cir. 1994) ............................................................................................... 9

*Doe v. Univ. of North Tex. Health Sci. Ctr.*,
    No. 23-10764, 2024 WL 3427049, at *5 (5th Cir. July 16, 2024) ...........................11

*Dorsey v. Portfolio Equities, Inc.*,
    540 F.3d 333 (5th Cir. 2008) ............................................................................................. 5

*Ex parte Young*,
    209 U.S. 123 (1908) ........................................................................................................... 7

*Fontenot v. McCraw*,
    777 F.3d 741 (5th Cir. 2015) ............................................................................................. 7

*Gilani v. Univ. of Tex. Sw. Med. Ctr.*,
    3:21-cv-1461-N, 2023 WL 2518811, at *5 (N.D. Tex. Mar. 13, 2023) .................................... 9

*King v. Sharp*,
    No. 4:21-cv-01005, 2023 WL 4303637, at *6 (E.D. Tex. June 30, 2023) ................................ 8

*Knighton v. Univ. of Tex. at Arlington*,
    No. 4:18-cv-00792-P, 2020 WL 1493554 at *5 (N.D. Tex. March 27, 2020) .................. 12, 16

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) ............................................................................................. 5

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ........................................................................................................... 9

*Miraglia v. Bd. of Supervisors of La. State Museum*,
   901 F.3d 565 (5th Cir. 2018) ........................................................................ 16

*Paterson v. Weinberger*,
   644 F.2d 521 (5th Cir. 1981) ..................................................................... 4, 5

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) ........................................................................................ 6

*Perez v. Tex. A&M Univ. at Corpus Christi*,
   589 F. App'x 244 (5th Cir. 2014) ............................................................... 10

*Pickett v. Tex. Tech Univ. Health Sci. Ctr.*,
   No. 5:20-CV-232-H-BQ, 2024 WL 1590161, at *17 (N.D. Tex. Jan. 2, 2024) ...................... 9

*Pierce v. Hearne Indep. Sch. Dist.*,
   600 F. App'x 194 (5th Cir. 2015) (per curiam ............................................. 4

*Plotkin v. IP Axess Inc.*,
   407 F.3d 690 (5th Cir.2005) ......................................................................... 5

*Plummer v. Univ. of Houston*,
   860 F.3d 767 (5th Cir. 2017) ........................................................................ 9

*Price v. Shorty*,
   632 F. App'x 211 (5th Cir. 2016) ................................................................. 7

*Quern v. Jordan*,
   440 U.S. 332 (1979) ...................................................................................... 7

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) ........................................................................ 4

*Shah v. Univ. of Tex. Sw. Med. Sch.*,
   129 F. Supp. 480 (N.D. Tex. 2019) ............................................................. 11

*Shaikh v. Tex. A&M Univ. Coll. of Med.*,
   739 Fed. App'x 215 (5th Cir. 2018) ....................................................... 13, 14

*Shurb v. Univ. of Tex. Health Sci. Ctr. At Houston-Sch. Of Med.*,
   63 F.Supp.3d 700 (S.D. Tex. 2014) ......................................................... 12, 16

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
   365 F.3d 353 (5th Cir. 2004) ........................................................................ 5

*Stauffer v. Gearhart*,
   741 F.3d 574 (5th Cir. 2014) ........................................................................ 6

*Sullivan v. Leor Energy, LLC*,
   600 F.3d 542 (5th Cir. 2010) ........................................................................ 6

*Tex. A&M Univ. Sys. v. Koseoglu*,
   233 S.W.3d 835 (Tex. 2007) ......................................................................... 7

*Verizon Md., Inc. v. Public Serv. Comm'n of Md.*,
   535 U.S. 635 (2002) ...................................................................................... 7

*Will v. Mich. Dep't of State Police*,
   491 U.S. 58 (1989) ........................................................................................ 6

*Windham v. Harris Cnty. Tex.*,
   875 F.3d 229 (5th Cir. 2017) ...................................................................... 12

## Statutes

29 U.S.C. § 794(a) ........................................................................................ 12
42 U.S.C. § 12132 ........................................................................................ 12

## Rules

Fed. R. Civ. P. 12(b)(1) ................................................................................ 4

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MEERA SALAMAH | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-cv-00477-D |
| | § | |
| UT SOUTHWESTERN HEALTH SYSTEMS; | § | |
| UNIVERSITY OF TEXAS SOUTHWESTERN | § | |
| MEDICAL CENTER, ANGELA MIHALIC, M.D., | § | |
| KEVIN KLEIN, M.D. | § | |
|     *Defendant.* | § | |

---

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
## FIRST AMENDED COMPLAINT

---

Defendants, The University of Texas Southwestern Medical Center ("UTSW"), Dr. Angela Mihalic, and Dr. Kevin Klein, file this Motion to Dismiss Plaintiff Meera Salamah's ("Plaintiff") First Amended Complaint ("Amended Complaint" or "Amend. Compl.") for lack of subject matter jurisdiction and failure to state a claim.

## I.    INTRODUCTION

Plaintiff Meera Salamah is a former medical student in The University of Texas Southwestern Medical Center's medical school. She alleges she was dismissed from medical school due to her disability, but acknowledges that she was dismissed, after exhausting all available appeals, because she failed to pass the United States Medical Licensing Exam ("USMLE") Step 1. At the time of Plaintiff's enrollment, UTSW required its medical students to take and pass Step 1 within one year of completing a six-week period designated to study for the exam, with or without accommodations. Plaintiff alleges that UTSW should have excused her from this requirement, and the failure to do so was discrimination based on her disability. She also alleges

that she was denied due process during her dismissal. Plaintiff now brings claims under the Americans with Disabilities Act, Rehabilitation Act of 1973, and Due Process Clause of the 14th Amendment under 42 U.S.C. § 1983. Her claims fail because she could not meet UTSW medical school's essential academic requirement of passing Step 1, and she was afforded all the process due for an academic dismissal.

## II.    FACTUAL BACKGROUND

Plaintiff was a medical student at UTSW. The Student Promotions Committee ("SPC") voted to dismiss Plaintiff from the medical school on March 1, 2023, for her failure to pass the USLME Step 1 examination. Amend. Compl. ¶ 36. The USMLE develops assessments used in medical education, licensure, and certification.[1] USMLE's mission is to "provide licensing authorities meaningful information from assessments of physician characteristics-- including medical knowledge, skills, values, and attitudes-- that are important to the provision of safe and effective patient care."[2] Step 1 specifically assess whether a potential physician "understand[s] and can apply important concepts of the sciences basic to the practice of medicine," and "ensures mastery of not only the sciences that provide a foundation for the safe and competent practice of medicine...but also the scientific principles required for maintenance of competence through lifelong learning."[3]

Plaintiff alleges that she was required to take and pass Step 1 before returning to medical school after a year-long absence. Amend. Compl. ¶ 33. UTSW students have six weeks to prepare for Step 1 in their second year of medical school.[4] Plaintiff, like all UTSW medical students, was

---

[1] *See* https://www.usmle.org/about-usmle (last accessed August 8, 2024).
[2] *Id.*
[3] *See* https://www.usmle.org/step-exams/step-1
[4] *See* https://www.utsouthwestern.edu/education/medical-school/curriculum/ (last accessed July 31, 2024).

expected to take Step 1 at the end of this period, had a maximum of one year from the end of this study period to take and pass Step 1, and faced possible dismissal if she did not pass Step 1 by the deadline. *See* Exhibit A – Dismissal Letter. Plaintiff's six-week study period ended on February 24, 2022. *Id*.

In February 2022, Plaintiff was granted an initial deferral on "certain requirements," including taking Step 1, during which she was expected to prepare for Step 1 and sit for the exam by April 8, 2022. Amend. Compl. ¶ 20. She was granted a *second* deferral through June 3, 2022, and was required to take Step 1 during this deferral. *Id*. ¶ 30. On June 6, 2022, she was granted a seven-month "medical leave of absence," until January 6, 2023. *Id*. ¶ 33. Plaintiff received an additional extension of her "administrative leave" through February 24, 2023. *Id.* ¶ 34.

Plaintiff was required to pass Step 1 on or before February 24, 2023, and before resuming her studies. *Id*. ¶¶ 33-34. All told, she was allowed to defer the requirement to pass Step 1 for a year from the end of her test preparation period, and by her own admission took Step 1 and failed it during this period. *Id*. ¶ 61. Before being dismissed, she was informed of her option to voluntarily withdraw instead of being dismissed, but she was ultimately dismissed for failing to pass Step 1 within the required time period. *Id*. ¶¶ 36, 63. Following her dismissal, Plaintiff exhausted all available appeals. *Id*. ¶ 37.

Now Plaintiff brings ADA, Rehabilitation Act, and due process claims against UTSW and Drs. Mihalic and Klein. Dr. Klein is a UTSW faculty member and the chair of the SPC, and Dr. Mihalic is the Dean of Medical Students and Associate Dean for Student Affairs. *Id.* ¶¶ 9-10. Specifically, Plaintiff alleges that UTSW discriminated against her by requiring her to meet academic requirements (including passing Step 1) while on medical leave. *Id.* ¶¶ 3, 44(a)-(f), 55(a)-(f). She also alleges that she was denied due process because: 1) she was given inadequate notice

of the requirement to take Step 1 before the end of her medical leave: 2) she did not receive notice

that her physician had not returned required documentation to support her accommodation request;

3) the SPC was given inaccurate information that her request for an extension was not based on

her disability; and 4) she was required to make a quick decision about whether she wanted to

withdraw from the program instead of being dismissed. *Id*. ¶¶ 60-64.

Plaintiff was dismissed because she was not qualified to continue in the program: she could

not complete the essential requirement of passing Step 1 within a year of the end of her study

period. Further, her due process allegations do not establish that she did not have notice of the

grounds for her dismissal or an opportunity to respond, or that the decision was not based on

UTSW faculty's sound academic discretion. Accordingly, her Amended Complaint must be

dismissed in its entirety.

### III.    STANDARD OF REVIEW

#### A.  Motion to Dismiss under Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move for dismissal where

a court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Plaintiff has the burden to

establish subject matter jurisdiction. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.

2001) (per curiam). Sovereign immunity (as recognized by the Eleventh Amendment) deprives a

court of jurisdiction and is thus properly raised in a motion to dismiss pursuant to Rule 12(b)(1).

*See Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 197 (5th Cir. 2015) (per curiam).

Under Rule 12(b)(1), a defendant may challenge a court's subject matter jurisdiction

through a "facial attack" or a "factual attack." *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th

Cir. 1981). UTSW brings a facial attack against Plaintiff's due process claim. Where a defendant

challenges subject matter jurisdiction on the face of a complaint, the district court presumes the

plaintiff's factual allegations to be true and determines whether those allegations are legally

sufficient to establish jurisdiction. *See id.* Here, even if Plaintiff's factual allegations are assumed to be true (which UTSW denies), UTSW is immune from Plaintiff's due process claim as a matter of law.

**B.  Motion to Dismiss under Rule 12(b)(6)**

To avoid dismissal under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc*., 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 664 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "To avoid a dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal quotation marks omitted). Importantly, a court should not "strain to find inferences favorable to the plaintiffs." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004). Factual allegations that render a plaintiff's claims merely "conceivable" or "speculative" are insufficient. *See Twombly*, 550 U.S. at 555.

When reviewing a motion to dismiss for failure to state a claim, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star*

*Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010).[5]

## IV.    LAW AND ARGUMENT

**A.  Defendants are entitled to dismissal of Plaintiff's § 1983 claim due to lack of subject matter jurisdiction.**

**1.    Defendants have sovereign immunity from Plaintiff's § 1983 claim.**

Plaintiff's due process claim against UTSW, Dr. Mihalic, and Dr. Klein is barred by sovereign immunity, as recognized by the Eleventh Amendment to the U.S. Constitution, which prohibits federal courts from granting monetary judgments or injunctive relief against states and state agencies. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). As "an instrumentality of the State of Texas," UTSW is entitled to the state's sovereign immunity. *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 260 (5th Cir. 2020); Tex. Educ. Code § 74.101.  To overcome UTSW's sovereign immunity, Plaintiff must show that "the state has waived sovereign immunity or Congress has expressly abrogated it." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019).  She cannot do so.

There is no waiver or abrogation of Texas' sovereign immunity from § 1983 claims. The express language of 42 U.S.C. § 1983 permits suits against a "person." *See* 42 U.S.C. § 1983. It is well-established that a state is not a "person" subject to suit under § 1983. *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) (per curiam). Neither are state employees acting in their official capacities. *Id*. For these

---

[5] Defendants attach Exhibit A – Dismissal Letter, to this motion, as it is both referenced in Plaintiff's Amended Complaint and central to Plaintiff's claims.

reasons, § 1983 claims do not lie against instrumentalities of a state, including state universities such as UTSW and state employees such as Dr. Mihalic and Dr. Klein. *See Quern v. Jordan*, 440 U.S. 332, 340–45 (1979); *Price v. Shorty*, 632 F. App'x 211, 212 (5th Cir. 2016) (per curiam).

Similarly, Plaintiff cannot point to any Texas statute that waives UTSW's sovereign immunity from § 1983 claims. *See Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007) ("It is up to the Legislature to institute such a waiver, and to date it has not seen fit to do so."). Because sovereign immunity bars Plaintiff's § 1983 claim against UTSW and Drs. Mihalic and Klein for alleged due process violations, this Court must dismiss it.

### 2. The *Ex parte Young* exception does not apply because Plaintiff has not alleged a legally cognizable due process claim or shown that Drs. Mihlaic or Klein were responsible for any due process issue.

Sovereign immunity also bars Plaintiff's claim for injunctive relief "in accordance with *Ex parte Young*," as suits for injunctive relief are allowed against state officials acting in their official capacities only under limited circumstances that are not present here. *See Ex parte Young*, 209 U.S. 123, 155-56 (1908); *Fontenot v. McCraw*, 777 F.3d 741, 752 (5th Cir. 2015). The *Ex parte Young* exception applies only where a plaintiff alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. *Ex parte Young*, 209 U.S. at 155-156; *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). The state officials sued must also have some connection with the enforcement of the challenged law or policy. *Ex parte Young*, 209 U.S. at 157. Courts need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law, which does not require analysis of the merits of the claim. *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019). As discussed more completely below in Section B, Plaintiff has not pled a legally cognizable due process claim, and therefore there is no ongoing constitutional violation. Even a straightforward inquiry based on the allegations in the

Amended Complaint shows that she had no liberty or property interest in continuing her medical education, and UTSW provided all process due for an academic dismissal: namely, notice and an opportunity to respond.

Nor has Plaintiff pled facts establishing that Dr. Mihalic or Dr. Klein had sufficient connection to the enforcement of the challenged law or policy. According to the Amended Complaint, Dr. Mihalic's involvement was limited to communicating Plaintiff's option to withdraw. And the due process violation attributed to the SPC (and, for the sake of argument, Dr. Klein as the SPC chair) is that it made a decision that Plaintiff does not agree with, not that it denied Plaintiff an opportunity to be heard. These are not due process violations.

Further, Plaintiff has not pled that either Dr. Mihalic or Dr. Klein can provide the injunctive relief requested – that is, to reinstate her as a student at UTSW. *See King v. Sharp*, No. 4:21-cv-01005, 2023 WL 4303637, at *6 (E.D. Tex. June 30, 2023) (citations omitted) (*Ex parte Young* "connection" prong requires that the official can provide the reinstatement requested).

Plaintiff has not stated an ongoing violation of federal law or that the named officials had some connection to the alleged violation. Therefore the *Ex parte Young* exception does not apply, and Plaintiff's due process claim is barred by the Eleventh Amendment.

**B.  Plaintiff has not pled a legally cognizable due process claim.**

If this Court determines that the *Ex parte Young* exception applies to Plaintiff's due process claim, the claim nonetheless fails on the merits. "To state a cause of action under § 1983 for violation of the Due Process Clause, [a plaintiff] must show that [she has] asserted a recognized liberty or property interest within the purview of the Fourteenth Amendment, and that [she was] intentionally or recklessly deprived of that interest, even temporarily, under color of state law."

*Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994) (en banc) (internal quotation marks omitted). Plaintiff has failed to allege facts establishing either of these required elements.

Plaintiff baldly alleges that she "was deprived of her property interest in continuing her education." Amend. Compl. ¶ 64. However, Plaintiff cannot show that she had a constitutionally protected property interest in her continued education. Although the Fifth Circuit has sometimes assumed without deciding the existence of such a property interest, neither the U.S. Supreme Court nor the Fifth Circuit have held that students have a property interest in continued education. *Pickett v. Tex. Tech Univ. Health Sci. Ctr*., No. 5:20-CV-232-H-BQ, 2024 WL 1590161, at *17 (N.D. Tex. Jan. 2, 2024). Property interests are derived from independent sources such as state statutes and contractual provisions, and federal constitutional law determines whether such an interest is constitutionally protected. *Id*. Resolution of whether the Fourteenth Amendment confers a property interest in higher education begins with a determination of what state law provides. *Id*. Plaintiff has not pointed to a state statute or constitutional provision protecting such an interest. *See id*. (plaintiff's expectation to continue her education, without a showing of a "state statutorily or constitutionally protected interest" did not confer a property right in continued higher education"); *see also Plummer v. Univ. of Houston*, 860 F.3d 767, 773 n.6 (5th Cir. 2017) (citations omitted) (Texas has not recognized a property interest in graduate higher education.).

Further, assuming for the sake of argument that continued medical education is a protected property interest, Plaintiff has failed to allege facts showing she was deprived of that interest without process. The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Gilani v. Univ. of Tex. Sw. Med. Ctr.*, 3:21-cv-1461-N, 2023 WL 2518811, at *5 (N.D. Tex. Mar. 13, 2023) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). The requirement is flexible and calls for "such procedural protections as the particular

9

situation demands." *Id*. Students who fail to meet academic requirements are entitled to far less stringent procedural requirements than students charged with violations of rules of conduct. *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 87 (1978). Academic dismissal "requires only that the student have meaningful notice and an opportunity to respond." *Davis v. Mann*, 882 F.2d 967, 975 (5th Cir. 1989) (citing *Mathews*, 424 U.S. at 333).

Plaintiff acknowledges that UTSW describes her dismissal as academic but nonetheless argues it was based on her non-attendance, and thus disciplinary. Amend. Compl. ¶ 65. She also argues that Step 1 was not UTSW's requirement and therefore her failure to take it was not a failure to meet academic requirements. *Id*. Courts have held that attendance issues are academic concerns in the higher education context, as they reflect a student's ability to perform academically and professionally. *See Perez v. Tex. A&M Univ. at Corpus Christi*, 589 F. App'x 244, 249 (5th Cir. 2014) (collecting cases). Even setting aside that flaw in Plaintiff's allegations, her arguments fail for multiple reasons.

Plaintiff has pled no facts to establish that her dismissal was based on violating a rule of conduct. *Aragona v. Berry*, No. 3:10-CV-1610-G, 2012 WL 467069, at *5 (N.D. Tex. Feb. 14, 2012) (a student is dismissed for disciplinary reasons when he violates a valid rule of conduct). Rather, Plaintiff's dismissal letter specifically states that the SPC reviewed her entire *academic* record, including that she failed Step 1 in November 2022 and did not pass Step 1 before her deadline. *See* Exhibit A – Dismissal Letter. The letter does not mention a violation of a code of conduct and indeed refers Plaintiff to the appeal procedure defined in its *Academic* Decisions policy.

Despite Plaintiff's baseless conclusions to the contrary, UTSW medical students are required to pass Step 1 in order to continue in the program. *See* Exhibit A. The decision to dismiss

Plaintiff for failure to pass Step 1 was undoubtedly academic. *See Shah v. Univ. of Tex. Sw. Med. Sch.*, 129 F. Supp. 480, 499 (N.D. Tex. 2019) (plaintiff's dismissal was academic, despite his allegation that it was disciplinary, where he failed to allege that his dismissal was due to misconduct.). A decision to dismiss a student for academic reasons lies with the school official and involves subjective and evaluative decisions. *Horowitz*, 435 U.S. at 89-90. So long as the student is provided with notice of their unsatisfactory performance, an opportunity to respond, and the ultimate decision is careful and deliberate, due process requirements are met. *Id* at 85.

Plaintiff's allegations to support her due process claim are merely a list of reasons why she was not able to pass Step 1 in the time required, including that: she did not know about the requirement to pass Step 1 (although she made at least one attempt to pass while on medical leave); she did not know that her physician failed to return paperwork to support her request to extend her Step 1 deadline; and Dr. Mihalic informed her of her option to withdraw instead of being dismissed, but she had to make the decision too quickly. Amend. Compl. ¶¶ 60-63. These allegations plainly do not state a due process claim.

Based on these allegations and the rest of the Amended Complaint, there is no disputing that Plaintiff had notice of the reason for her dismissal and an opportunity to respond. The dismissal letter states that the SPC considered, among other things, two letters submitted on Plaintiff's behalf, including one from Plaintiff herself. *See* Exhibit A. Further, Plaintiff specifically alleged that she exhausted the appeals process available to her. *See Doe v. Univ. of N. Tex. Health Sci. Ctr.*, No. 23-10764, 2024 WL 3427049, at *5 (5th Cir. July 16, 2024) (upholding the plaintiff's dismissal from medical school where he received three notices regarding his academic dismissal and was given an opportunity to appeal, stating it routinely affirms academic dismissals where the student is given notice and the opportunity to appeal) (collecting cases).

11

In summary, Plaintiff was informed of the reason for her academic dismissal and had an opportunity to respond, and the decision to dismiss her was the result of the SPC's careful academic judgment. Plaintiff simply cannot state a claim for a due process violation under § 1983 based on her Amended Complaint, and the Court should dismiss this claim.

### C. Plaintiff has not pled a legally cognizable disability discrimination claim under the ADA or Rehabilitation Act.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Rehabilitation Act contains a similar prohibition. *See* 29 U.S.C. § 794(a). Because "[t]he remedies, procedures, and rights available under the Rehabilitation Act parallel those available under the ADA, . . . jurisprudence interpreting either section is applicable to both." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020) (citing *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002)). To establish a claim under either statute, in the context of a student allegedly excluded from an educational program, a plaintiff must establish she is: 1) a qualified individual with a disability; 2) otherwise qualified for the program; 3) excluded from, denied the benefits of, or otherwise subjected to discrimination under the program due to her disability. *Shurb v. Univ. of Tex. Health Sci. Ctr. At Houston-Sch. Of Med*., 63 F.Supp.3d 700, 707 (S.D. Tex. 2014). A plaintiff who asserts a claim under the theory of failure to accommodate bears the burden of establishing that the requested modification was reasonable. *See Knighton v. Univ. of Tex. at Arlington*, No. 4:18-cv-00792-P, 2020 WL 1493554, at *5 (N.D. Tex. March 27, 2020); *Block v. Tex. Bd. of Law Exam'rs*, 952 F.3d 613, 618 (5th Cir. 2020); *Windham v. Harris Cnty. Tex.,* 875 F.3d 229, 235 (5th Cir. 2017). Plaintiff cannot establish that she was qualified for

medical school, or that her requested accommodation was reasonable. Additionally, she has not pled facts that establish the alleged discrimination was intentional.

To be otherwise qualified for a postsecondary education program, an individual with a disability must satisfy the program's essential requirements, with or without the aid of accommodations. *Shaikh v. Tex. A&M Univ. Coll. of Med.*, 739 Fed. App'x 215, 220 (5th Cir. 2018). A requirement is essential if the nature of the program would be fundamentally altered without it. *Id*. A university is not required to provide alterations that would "fundamentally alter the nature of the service, program, or activity," and essential requirements are not regarded as discriminatory. *Shurb*, 63 F. Supp. 3d at 710 (citations omitted); *Horowitz* 435 U.S. at 96 n.6 ("[U]niversity faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation."); *Aragona*, 2012 WL 467069, at *10 (citations omitted) (academic requirements that are essential to the instruction being pursued will not be regarded as discriminatory.). Absent evidence of discriminatory intent, reasonable deference must be accorded to an educational institution's academic decisions. *Id*.

Plaintiff makes several creative attempts to plead around the fact that her request for an accommodation[6] – that she receive an additional extension of the deadline to pass Step 1 – was not a request to be excused from UTSW's essential requirement that she pass Step 1 within a year of the end of her study period. Despite this, Plaintiff's Amended Complaint establishes that she was not qualified to continue in the program, UTSW's Step 1 requirement was reasonable, and her request to be excused from Step 1 requirement was not reasonable.

---

[6] Defendants do not concede that Plaintiff's request to extend her Step 1 deadline was a request for an accommodation based on a disability. For the sake of clarity, Plaintiff's request for an extension of the Step 1 deadline will hereafter be referred to as an "accommodation."

## 1. Plaintiff was not qualified to continue in the program.

The facts in this case are similar, yet distinguishable, from the facts underlying the Fifth Circuit's *Shaikh* decision. 739 Fed. App'x 215. The plaintiff in *Shaikh* was a medical student who did not pass the USMLE Step 1 exam by his school's deadline. *Id*. at 216-217. He was given the opportunity to dismiss or withdraw from the program, elected to withdraw, and sued Texas A&M University when it declined to readmit him to the program. *Id*. The court found that he plausibly alleged that he satisfied the school's essential requirements because nothing on the face of his complaint established that Step 1 was an essential requirement. *Id*. at 222. Notably, the plaintiff also alleged that the defendant indicated he could be readmitted to the program, presumably without first passing Step 1, which further indicated that Step 1 was not an essential requirement.

Here, Plaintiff's Amended Complaint establishes that Step 1 was an essential requirement of UTSW's medical school curriculum, and unlike in *Shaikh*, she does not allege that UTSW indicated she could be readmitted to the program. Plaintiff makes multiple allegations about the *required* nature of Step 1, and ultimately states she was *required* to pass Step 1 before returning from her medical leave of absence. Amend. Compl. ¶ 3 (UTSW's policies were discriminatory because they *required* students to continue to meet *educational objectives* during their leave); ¶ 20 (Plaintiff was initially given a deferral to meet the *requirement* of taking Step 1); ¶ 25 (UTSW refused to make modifications to the *requirement* of sitting for Step 1); ¶ 30 (during her first deferral through June 2022, she would still be *required* to sit for Step 1); ¶ 33 (she was granted a medical leave of absence during which she was *required* to sit for Step 1).

In addition to Plaintiff's own allegations that establish the essential nature of Step 1, the dismissal letter plainly states that the requirement to take Step 1 within a year of students' study

period is an *essential requirement*, and that students who cannot meet the requirement, with or without an accommodation, cannot progress in the curriculum. Not only does the letter explicitly use the word *essential* to describe the requirement, but it also states that without it, students cannot continue in the program. It follows that if a student cannot continue in a program without meeting a requirement, the requirement is essential to the program.

The alleged facts in this case are analogous to those alleged in *Block v. Tex. Bd. of Law Exam'rs*, 952 F.3d 613 (5th Cir. 2020). In *Block*, the plaintiff was an attorney licensed in Louisiana who had not practiced in over ten years due to various disabilities. *See generally, Block* 952 F.3d 613. Defendant, the Texas Board of Law Examiners ("TBLE"), sometimes admits lawyers to practice without examination if they have been practicing law in another jurisdiction for five out of the seven years preceding their bar application. *Id*. Plaintiff attempted to take the bar twice but failed each time, and he later requested that he be granted an accommodation and admitted to the bar without examination. Because he had not been practicing in the preceding ten years, he was denied admission to the bar and sued the TBLE for disability discrimination. *Id*.

The court found that the TBLE's admission without examination policy was reasonable, noting the state had broad powers, and interest, to establish standards for licensed practitioners. *Id*. at 618 n.18. It also found that the plaintiff's request to modify this requirement was not reasonable, especially in light of the fact that he would still not be eligible to practice with his requested modification because of his failed bar exam attempts. *Id*. at 619 n.19. Here, UTSW's requirement that medical students pass Step 1 within a year of the end of their study period is reasonable. Step 1 is a crucial measure used by medical schools across the country and assesses whether examinees have the knowledge and ability to practice medicine safely. Further,

universities have broad discretion in administering their academic requirements and standards. *Shurb*, 63 F. Supp. 3d at 710 (citations omitted); *Horowitz* 435 U.S. at 96 n.6. Plaintiff's proposed accommodation would have rendered her disqualified to continue in the program – and like the plaintiff's request in *Block*, is really a request that an essential requirement not be applied to her. UTSW's application of its essential Step 1 requirement to Plaintiff was not discriminatory, and there are no facts alleged in the Amended Complaint to establish that such a request was reasonable. *See Knighton* 2020 WL 1493554, at *6 (Plaintiff's request that the defendant extend her deadline to complete the hours required for the semester was not reasonable.).

Plaintiff could not have met the essential requirements of UTSW's medical school even with her requested accommodation, because her requested accommodation was to be excused from the requirement altogether. UTSW was not required to excuse Plaintiff from this essential requirement. Therefore, Plaintiff's Amended Complaint establishes that she cannot meet the first element of a disability discrimination claim, and her claim must be dismissed.

### 2.  Plaintiff does not allege that UTSW intentionally discriminated against her.

Not only does the Amended Complaint establish that Plaintiff was not qualified to continue in medical school, but she has also not alleged that her dismissal was based on intentional discrimination. "[T]o recover compensatory damages [under the ADA or Rehabilitation Act], a plaintiff must also prove that the discrimination was intentional." *Cadena*, 946 F.3d at 724. Although the Fifth Circuit has not defined the precise standard for "intent," it has generally acknowledged that "something more than deliberate indifference" is required. *Id.* (quoting *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 575 (5th Cir. 2018)).

Plaintiff does not allege any conduct that remotely approaches deliberate indifference—let alone conduct *more* than deliberate indifference. While Plaintiff may not agree with UTSW's

essential requirement that all medical students pass Step 1 within a year, she has not alleged that anyone at UTSW intentionally discriminated against her. Indeed, her Amended Complaint shows she was granted multiple deferrals and leaves of absence, and she was given the maximum time allowed to pass Step 1 pursuant to UTSW policy. UTSW's decision to dismiss her was careful and deliberate, evidenced by the fact that it was based on, among other things, information submitted by Plaintiff herself, and on Plaintiff's behalf, and that Plaintiff fully exhausted the appeals available to her. That UTSW did not excuse Plaintiff from an essential requirement of its medical school curriculum is not intentional discrimination. Accordingly, UTSW is entitled to deference in its decision to dismiss Plaintiff from medical school.

## CONCLUSION

For the foregoing reasons, Defendants UTSW, Dr. Angela Mihalic, and Dr. Kevin Klein respectfully request that this Court dismiss Plaintiff's First Amended Complaint in its entirety.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

_____*/s/ Mary B. Quimby*_____
**MARY B. QUIMBY**
*Attorney in Charge*
Texas Bar No. 24132506
Assistant Attorney General

17

General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120-Phone/(512) 320-0667-Fax
mary.quimby@oag.texas.gov
*Counsel for Defendants- The University of Texas
Southwestern Medical Center, Angela Mihalic,
M.D., and Kevin Klein, M.D.*

CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2024, a true and correct copy of this document was electronically filed using the Court's CM/ECF system, which will send notification of such filing to the following counsel of record:

S. Tomiyo Stoner
UNDAUNTED LAW FIRM, P.C.
4000 E. Las Colinas Blvd., Suite 491
Irving, Texas 75039
tstoner@undauntedlaw.com
Counsel for Plaintiff

_____ */s/ Mary B. Quimby*_____
**MARY B. QUIMBY**

18