IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| | § | |
| MEERA SALAMAH | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:24-cv-00477-D |
| UT SOUTHWESTERN HEALTH | § | |
| SYSTEMS; UNIVERSITY OF TEXAS | § | |
| SOUTHWESTERN MEDICAL CENTER, | § | |
| ANGELA MIHALIC, M.D., KEVIN | § | |
| KLEIN, M.D. | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO 12(B)(6) MOTION**

1

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 3

II.   APPLICABLE PLEADING STANDARDS ........................................................... 4

  A.  Standard Pursuant to Fed. R. Civ. Proc. 12(b)(1) ........................................ 4

  B.  Standard Under Fed. R. Civ. Proc. 12(b)(6) ................................................. 5

III.  PLAINTIFF'S 1983 CLAIMS FALL WITHIN THE EX PARTE YOUNG
EXCEPTION ................................................................................................................. 7

IV.   SALAMAH WAS DENIED PROCEDURAL DUE PROCESS ................................... 9

  A.  Salamah has a cognizable interest in her education. ................................. 9

  B.  Salamah had a right to due process and that right must be evaluated under an
academic dismissal standard. ........................................................................... 10

  C.  Salamah's dismissal did not meet due process requirements under either the
disciplinary or academic dismissal standard. .................................................. 13

V.    SALAMAH PROPERLY STATES A 504/ADA CLAIM ...................................... 14

VI.   ABROGATION UNDER TITLE II OF THE ADA IS VALID WHERE ADA
CLAIMS IMPLICATE CONSTITUTIONAL RIGHTS ...................................... 17

VII.  SALAMAH SEEKS LEAVE TO AMEND. .......................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Andrade Enters. v. Cinnaroll Bakeries, Ltd.*, No. SA-03-CA-695-RF, 2003 U.S. Dist. LEXIS 20823, at *5 (W.D. Tex. Oct. 31, 2003) ................................................................ 18

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). ........................................................................ 4

*Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 991 (9th Cir. 2007) (en banc) ........................ 15

*Carey v. Piphus,* 435 U.S. 247 (1978). ...................................................................... 9

*Davis v. Mann*, 882 F.2d 967, 973 (5th Cir. 1989) .................................................... 8

*Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976) ................................................................ 5

*Guckenberger v. Boston University*, 957 F. Supp. 306 (D. Mass 1997) ...................................... 15

*Hart v. Bayer Corp.*, 199 F.3d 239, 247 (5th Cir. 2000). ............................................. 18

*Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 81, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000) ........... 17

*Kipp Flores Architects, LLC v. Mid-Continent Cas. Co.*, No. 4:14-cv-02702, 2015 U.S. Dist. LEXIS 177360, at *16 (S.D. Tex. Mar. 13, 2015) ................................................... 5

*Mathai v. Bd. of Supervisors of La. State Univ. & Agr. & Mech. Coll.*, 959 F.Supp.2d 951, 960 (E.D. La. 2013) ...................................................................................... 10

*Mathews v. Eldridge*, 424 U.S. 319, 333 ................................................................. 9

McGregor v. La. State Univ. Bd. of Supervisors, 3 F.3d 850, 855 (5th Cir. 1993) ................... 14

*Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), cert. denied, 449 U.S. 953, 101 S. Ct. 358, 66 L. Ed. 2d 217 (1980) ............................................................ 3

*Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, ..................................... 6

*NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) ................................. 7

*Oliver v. Univ. of Tex. Sw. Med. Sch.,* No. 3:18-CV-1549-B, 2019 U.S. Dist. LEXIS 21289, *25 (N.D. Tex. Feb. 11, 2019) ......................................................................... 10

*Patterson v. Rawlings*, 287 F. Supp. 3d 632, 637 (N.D. Tex. 2018) (Fitzwater, J.). ................. 3

*Plummer v. Univ. of Houston*, 860 F.3d 767, 773 ...................................................... 8

*Rogers v. Western University of Health Sciences*, 2019 WL 4887847 (9th Cir. Oct. 3, 2019). ... 12

*Ross v. Tex. Educ. Agency*, 409 Fed. Appx. 765, 768 (5th Cir. 2011) ................................. 5

*Shah v. Univ. of Tex. Sw. Med. Sch.,* 54 F. Supp. 3d 681, 688 n.4 (N.D. Tex. 2014) (Fitzwater, C.J.) ...................................................................................... 8

*Shaikh v. Tex. A&M Univ. Coll. of Med*. 739 Fed. App'x 215, 220 (5th Cir. 2018) ................... 14

*Smith v. Reg'l Transit Auth.,* 756 F.3d 340, 347 (5th Cir. 2014) ...................................... 3

United States v. Georgia, 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006)..................... 16

*Wilson v. Garcia*, 471 U.S. 261, 266 (1985)................................................................... 6

*Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 423 (1987)................ 6

**Rules**

**Fed. R. Civ. Proc. 12(b)(1)**......................................................................... 3

**Fed. R. Civ. Proc. 12(b)(6)**......................................................................... 3

\

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MEERA SALAMAH | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:24-cv-00477-D |
| UT SOUTHWESTERN HEALTH | § | |
| SYSTEMS; UNIVERSITY OF TEXAS | § | |
| SOUTHWESTERN MEDICAL CENTER, | § | |
| ANGELA MIHALIC, M.D., KEVIN | § | |
| KLEIN, M.D. | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO 12(B)(6) MOTION

Counsel for Plaintiff Meera Salamah submits the following response in opposition to the

Motion to Dismiss filed by Defendants University of Texas Medical Center (hereafter "UTSW"),

Angela Mihalic, M.D., and Kevin Klein, M.D., on August 13, 2024 (ECF No. 10).

## I. INTRODUCTION

Salamah, the recipient of a lung transplant and an individual with related disabilities, was

denied the opportunity to complete her medical school education. Salamah matriculated to UTSW

in August of 2020. Due to her disabilities, Salamah was on deferral or medical leave beginning

with an accommodation request made on February 19, 2022, and continuing through February 24,

2023. First Amended Complaint (hereafter "FAC") ¶¶ 30-34.

Salamah's timeline differs somewhat from that offered by UTSW. UTSW contends she

(and other UTSW students) were required to complete the Step 1 examination within one-year,

1

which Salamah disputes. *Id.* ¶36.[1] UTSW also alleges that in her case she was required to take USMLE Step 1 "within one year from the last date of your scheduled test preparation period." That period allegedly "ended on 2/24/22." Salamah's Initial Accommodation Request stated that she "would like to begin the STEP Elective (study period) on February 28, 2022." There is no dispute she was dismissed for failing to complete the USMLE Step 1 by February 24, 2023, which was the last date of her leave. Id. ¶¶ 33, 36, see also, ECF No. 10-1.

The question before the Court is whether a public university can deny a student the opportunity to continue her education if she becomes ill enough to require extended medical leave. UTSW attempts to couch its discriminatory requirements as "academic," by claiming that it was the failure of the examination, not the non-attendance or disability that led to her dismissal. This argument collapses under scrutiny. UTSW conflates the fact that Salamah could not pass USMLE STEP 1 while she was too ill to study with the suggestion she could not pass USMLE STEP 1 at all. By UTSW's own admission, the STEP 1 examination requires a six-week period of study. UTSW did not find that Salamah failed to meet academic standards, it imposed an additional academic standard for students with disabilities – the ability to pass STEP 1 without studying.

## II. APPLICABLE PLEADING STANDARDS

### A. Standard Pursuant to Fed. R. Civ. Proc. 12(b)(1)

UTSW brings a facial challenge to the complaint on the basis that UTSW is immune from Plaintiff's suit as a matter of law.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Smith v. Reg'l Transit Auth.,* 756 F.3d 340, 347 (5th Cir. 2014) UTSW brings a 'facial attack' on the

---

[1] Although Salamah does not expressly plead as much in the FAC, it is her contention that UTSW utilized a lottery system to provide various examination schedules to students, such that there was no uniform period of time to study for and take the STEP examination.

which requires the court, "merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp*., 613 F.2d 507, 511 (5th Cir.), cert. denied, 449 U.S. 953, 101 S. Ct. 358, 66 L. Ed. 2d 217 (1980); see *Williamson*, 645 F.2d at 412 (when Rule 12(b)(1) motion is facial attack, "the plaintiff is left with safeguards similar to those retained" on a Rule 12(b)(6)). Thus, if the plaintiff has sufficiently alleged jurisdiction, the court must deny the Rule 12(b)(1) motion. *See Patterson v. Rawlings*, 287 F. Supp. 3d 632, 637 (N.D. Tex. 2018) (Fitzwater, J.).

**B.  Standard Under Fed. R. Civ. Proc. 12(b)(6)**

Fed. R. Civ. P. 8(a)(2) requires only a short and plain statement of a claim showing that the pleader is entitled to relief, giving a defendant fair notice of what the claim is and the grounds. upon which it rests. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendant cites to *Iqba1* for guidance in interpreting this standard. Iqbal, who had been detained as a "person of high interest" on suspicion of terrorist activity, claimed high-level Department of Justice employees engaged in "purposeful and unlawful discrimination" against him because of his membership in a protected class (namely ethnicity and religion). The Supreme Court found Iqbal failed to state a plausible claim for relief. Chiefly, the Court concluded it was implausible to suggest the disparate impact was the result of discriminatory aim by senior officials, where Iqbal was claiming targeting due to characteristics he shared with the perpetrators of the September 11th attacks.  Given the shared characteristics of known terrorists, the Court found it implausible to conclude members of the protected class were detained disproportionately due to

bias by senior officials. After *Iqbal*, a court must still accept a complaint's allegations as true, excepting only "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." The reviewing court may draw on its experience and common sense. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

One of the reasons Iqbal did not survive dismissal is that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution" to prevail. *Ashcroft v. Iqbal,* 556 U.S. 662, 662, 129 S. Ct. 1937, 1939 (2009) 127 S. Ct. 1955 4 The Court addressed claims these officials directly, through their own individual actions, violated the Constitution. *Id*., at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. 5 *Id.*, at 555, 127 S. Ct. 1955. 6 *Id.* 7 Pp. 677-680. There is no comparable requirement here. Instead, Plaintiff must only assert facially plausible claim of breach of contract and the other "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Iqbal* has not changed the standard that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); see also Twombly, 550 U.S. at 555. *Kipp Flores Architects, LLC v. Mid-Continent Cas. Co.*, No. 4:14-cv-02702, 2015 U.S. Dist. LEXIS 177360, at *16 (S.D. Tex. Mar. 13, 2015).

### III.   PLAINTIFF'S 1983 CLAIMS FALL WITHIN THE EX PARTE YOUNG EXCEPTION

Eleventh Amendment Immunity has expanded and contracted dramatically over time and circuits differ in the interpretation of prior precedent. See, e.g., *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Alden v. Maine*, 527 U.S. 706 (1999) *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). Such immunity, at this circuit, at this point in time, extends to UTSW. *Ross v. Tex. Educ. Agency*, 409 Fed. Appx. 765, 768 (5th Cir. 2011) (per curiam). Plaintiff does not assert a cause of action against UTSW, but instead Plaintiff asserts claims against Drs. Mihalic and Klein in their official capacities as the Dean of Medical Students and the Chair of the Student Promotions Committee under 42 U.S.C. § 1983 through the *Ex Parte Young* exception to sovereign immunity.

Section 1983 suits proceed under the legal fiction that one is suing a state official in her individual capacity for a violation of § 1983. Section 1983, in turn, creates no substantive rights; rather, it provides a remedy against officials who act under color of state law to violate a right guaranteed by federal law. The paradigm case for a § 1983 violation has been a violation of the federal Constitution, and many commentators refer to § 1983 cases as "constitutional torts., See, e.g., William Burnham, Separating Constitutional and Common-Law Torts, 73 MINN. L. Rev. 515, 516 (1989); John C. Jeffries, Jr., In Praise of the Eleventh Amendment and Section 1983, 84 VA. L. Rev. 47, 53 (1998). Section 1983 is a "most important, and ubiquitous, civil rights statute." *Wilson v. Garcia*, 471 U.S. 261, 266 (1985).

Generally, ADA suits do not also proceed as § 1983 claims. A plaintiff alleging a violation of a federal statute will be permitted to sue under § 1983 unless (1) "the statute [does] not create enforceable rights, privileges, or immunities within the meaning of § 1983," or (2) "Congress has foreclosed such enforcement of the statute in the enactment itself." *Wright v. Roanoke*

5

*Redevelopment and Housing Authority*, 479 U.S. 418, 423 (1987). *Wilder v. Va. Hosp. Ass'n,* 496

U.S. 498, 508, 110 S. Ct. 2510, 2517 (1990) (overruled by statute) because the applicability of the

ADA has been viewed as the type of "comprehensive remedial scheme" that does not require

intervention under Section 1983, it is not commonly asserted alongside an ADA claim. See, e.g.,

*Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, (finding that, because

Congress had developed a comprehensive remedial scheme under the ADA, it had foreclosed the

plaintiff's recourse to § 1983.) However, here, Defendants assert immunity pursuant to Title II of

the ADA, and this cause of action is brought in the alternative.

To determine when *Ex Parte Young* applies, courts perform a "straightforward inquiry into

whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly

characterized as prospective." "The theory of the [*Ex Parte Young*] case was than an

unconstitutional enactment is 'void' and therefore does not 'impart to the officer any immunity from

responsibility to the supreme authority of the United States.'" *Pennhurst*, 465 U.S. at 102 (cleaned

up) (quoting *Ex Parte Young*, 209 U.S. at 160). see also *Pennhurst*, 465 U.S. at 102 ("[A] suit

challenging the constitutionality of a state official's action is not one against the State."). Therefore,

"[s]uits by private citizens against state officers in their official capacities are not . . . categorically

barred." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) (cleaned up) (quoting

*Fontenot*, 777 F.3d at 752)

Salamah expressly pleads the application of *Ex Parte Young* and requests the Court Award

injunctive relief so Plaintiff may be "reinstated as a student, or otherwise be permitted to continue

her studies; and award[ed] declaratory relief such that policies discriminating against students with

disabilities be revoked and/or replaced with non-discriminatory policies." FAC ¶ 68. This court

previously addressed a similar claim for relief and concluded that the plaintiff alleged a continuing

6

deprivation of "his property and liberty interests in his professional reputation" because of the threat that defendants would inform other medical schools or "third parties" of the plaintiff's negative evaluation forms and his dismissal from the medical school. *Shah II,* 129 F. Supp. 3d at 496. Salamah clearly wishes to continue her education and has requested injunctive relief. (See, e.g., FAC ¶ 38, "Ms. Salamah is now fully able to return to her studies but has been denied the opportunity to continue at UTSW. Due to her dismissal, she is also effectively precluded from continuing her studies at another university.") There are two options that would enable her to continue her medical education – the first is reinstatement at UTSW and the second is to change her status so that she will be eligible to continue at another institution, both of which she has requested. FAC ¶ 68, Defendants appear to allege that Plaintiff has not shown Drs. Mihalic and Klein can provide the relief requested, but such allegation is certainly plausible where they were the parties responsible for her dismissal and Defendants provide no reason it is not plausible Salamah could not be reinstated as a student. Such allegations are questions of fact not appropriate for the pleading stage.

## IV. SALAMAH WAS DENIED PROCEDURAL DUE PROCESS

### A. Salamah has a cognizable interest in her education.

The Fifth Circuit has repeatedly assumed that students have some type of protected interest in their education that must be appropriately safeguarded. *See Shaboon v. Duncan*, 252 F.3d 722, 730 (5th Cir. 2001) (assuming, without deciding, that medical resident had protected interest in her position); *Davis v. Mann*, 882 F.2d 967, 973 (5th Cir. 1989) (assuming the existence of a liberty or property interest and holding that dental resident received adequate process under Fourteenth Amendment); *Dixon v. Ala. State Bd. of Ed.*, 294 F.2d 150, 157 (5th Cir. 1961) (holding that there must be some notice and hearing before student expulsion from state college or university because students had interest in their

college education). It is not necessary for the Supreme Court or Fifth Circuit to expressly state that there is a property interest in education, dozens of cases have recognized the existence of either a valid liberty interest or a property, including those before the Fifth Circuit, and none cited by Defendants or known to Plaintiff have held otherwise. *See, e.g., Goss v. Lopez,* 419 U.S. 565, 581 (1975); *Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78 (1978); *Shaboon v. Duncan,* 252 F.3d 722, 730 (5th Cir. 2001); *Shah v. Univ. of Tex. Sw. Med. Sch.,* 54 F. Supp. 3d 681, 688 n.4 (N.D. Tex. 2014) (Fitzwater, C.J.) ("Shah I"). On the other hand, Defendants cite a single note in *Plummer v. Univ. of Houston*, 860 F.3d 767, 773 to suggest that a medical school education, despite its significant monetary costs and time commitment, does not confer any property interest. *Plummer* and other courts have recognized that students have a liberty interest in education and was decided on summary judgment, and only after a detailed examination of the evidence. *Id.,* see also, *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995) (confirming Texas recognizes a liberty interest in education.)

**B. Salamah had a right to due process and that right must be evaluated under an academic dismissal standard.**

The right to due process prior to deprivation of a property or liberty interest is absolute and longstanding. *Carey v. Piphus,* 435 U.S. 247 (1978). As UTSW has stated, "due process requires notice of the reason for dismissal and an opportunity to respond." "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Id. (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). This requirement is "flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 333. Because due process is flexible and calls for such procedural protections as the particular situation demands, the Supreme Court has held that in a public

university setting, the level of procedural protection that students are due varies according to whether students are dismissed or suspended for disciplinary or academic reasons. *Bd. Of Curators v. Horowitz*, 435 U.S. 78, 86, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978) ("Horowitz"). When the dismissal is for disciplinary reasons, the Fourteenth Amendment requires that "the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez,* 419 U.S. 565, 581, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975). In the context of a public university student who has been dismissed, the due process requirements hinge on whether the dismissal was disciplinary or academic. *Shah I*, 54 F. Supp. 3d at 692 (citing *Horowitz*, 435 U.S. at 86). In contrast, suspensions or dismissals for academic reasons "call [] for far less stringent procedural requirements." *Horowitz*, 435 U.S. at 86.

This has been characterized as two sliding scales—one based on the severity of conduct at issue (failure to meet academic standards v. academic dishonesty or other misconduct) and the second based on the severity of the sanction (temporary suspensions v. permanent expulsions). *Oliver v. Univ. of Tex. Sw. Med. Sch.,* No. 3:18-CV-1549-B, 2019 U.S. Dist. LEXIS 21289, *25 (N.D. Tex. Feb. 11, 2019) Here, the dismissal was the ultimate sanction, and it was based not on Salamah's academic abilities, but on her illness.

Academic dismissals in a medical school context reflect upon a student's ability to perform as a doctor. See, e.g., *Horowitz*, 435 U.S. at 89-90; see also *Mathai v. Bd. of Supervisors of La. State Univ. & Agr. & Mech. Coll.*, 959 F.Supp.2d 951, 960 (E.D. La. 2013) (reviewing cases from First, Sixth, and Seventh Circuits, and concluding that "an academic dismissal will be found where a student's scholarship or conduct reflects on the personal qualities necessary to succeed in the field in which he or she is studying and is based on an at least partially subjective appraisal of

9

those qualities." (citations and internal quotation marks omitted)); *Aragona*, 2012 WL 467069, at *6 (holding that dismissal was academic rather than disciplinary where there was no evidence to suggest that dental student was punished for any sort of behavioral misconduct, and, instead, that student's "problems stem largely from his inability to act professionally in his clinical responsibilities.") The common thread running through the academic dismissal cases was that the student lacked the ability to perform as a physician or professional.

Salamah's failure on the STEP examination had no relationship to her qualities as a student, nor any subjective analysis by UTSW faculty. Salamah was never afforded an opportunity to prepare for the STEP examination in a manner comparable to her peers who, by UTSW's admission would have had six weeks to prepare. Unlike Shah, who was accused of "waiting too long" to request permission to begin his third year of medical school without taking the national exam, "failing to timely and satisfactorily prepare three patient write-ups." (*Shah II*, p. 26), Salamah never had the opportunity to prepare for the examination when she was not on medical leave, and therefore, the examination was not indictive of her performance, nor professionalism.

Moreover, UTSW did not evaluate Salamah's academic performance. It is undisputed that UTSW did not create the STEP evaluation, teach curriculum geared toward passing the examination, nor evaluate Salamah's performance on it. UTSW is not entitled to deference regarding its academic standards because these standards are, in fact, not something UTSW has exercised judgment regarding. Finally, Salamah disputes that there even is an academic policy in place that always requires students to pass the STEP 1 examination in the same timeframes she was given, and instead would assert, if given leave to amend that the examination schedule was arbitrary, and she was not being evaluated by a universally applied standard.

**C. Salamah's dismissal did not meet due process requirements under either the disciplinary or academic dismissal standard.**

When a student is dismissed for disciplinary reasons, the Fourteenth Amendment requires that "the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez*, 419 U.S. 565, 581 (1975). Although academic dismissals have far less stringent requirements, it is still required that the student "be given some meaningful notice and an opportunity to respond." *Davis*, 882 F.2d at 975.

Salamah's dismissal was arbitrary in several ways, depriving her of due process under either standard. First, Salamah was not provided with adequate notes regarding the nature of the rules. UTSW did not, and even now has not, informed her of the specific "policy" that requires completion of STEP 1 within one year of the first attempt. In fact, she alleges she was given contrary information and told she would have until June of 2023 to take the examination, which was nearly four months after her dismissal. FAC ¶ 35, 60.

Second, the most meaningful evidence in Salamah's case – her request for disability accommodation – was not considered either before or after her dismissal. Salamah did request an accommodation using the appropriate methods and in a timely manner (FAC ¶ 61). However, there was one minor technicality with one of her physician's paperwork. It is well established law that students do not need to use "magic words" and cannot be denied accommodations for technical failures in the process of making a request. *See, e.g., Rogers v. Western University of Health Sciences*, 2019 WL 4887847 (9th Cir. Oct. 3, 2019). It is clear that Salamah attempted to make a request for accommodation. While gravely ill, she was unaware that one of her physicians had failed to complete required paperwork for the accommodations process. However, because of her

prior requests and her partial request it was improper for UTSW not to construe the request as one for accommodation. Accordingly, her claim was evaluated under the wrong policy. Even where there is notice and an opportunity to be heard, which Salamah does not concede there was, the ultimate decision must be careful and deliberate. The decision could not have been careful and deliberate if it did not apply the proper standard.

Third, given the grave penalty of dismissal, Salamah's attendance at a single hearing, without representation, cannot be construed as due process where she did not have the opportunity to evaluate the relevant evidence, including evidence of the rules she was charged with violating. Although this is evidence for a later stage, recordings make it clear that Salamah did not, at the conclusion of her hearing, understand the origin or application of the rule she supposedly violated.

Accordingly, Salamah is entitled to seek prospective relief pursuant to Section 1983 to remedy deprivation of her due process rights. Plaintiff has plausibly alleged that she was deprived of due process by Dean Mihalic and Dr. Klein, or in the alternative, has shown there is a question of fact entitling Salamah to conduct discovery.

## V.   SALAMAH PROPERLY STATES A 504/ADA CLAIM

Salamah has a substantive entitlement to relief under Section 504 of the Rehabilitation Act and/or Title II of the Americans with Disabilities Act. While the requirements of Section 504 and Title II of the Americans with Disabilities Act are similar in this context, the Fifth Circuit has distinguished between these two statutes in the analysis of whether there has been a waiver of sovereign immunity. The application of the Rehabilitation Act is conditioned upon the receipt of federal funds. Therefore, immunity has clearly been waived.

To state a claim for relief under Section 504, a plaintiff must allege that she or he was: (1) an "individual with a disability"; (2) "otherwise qualified" for the program; and (3) excluded from,

denied the benefits of, or otherwise subjected to discrimination under the program "solely by reason of her or his disability." 29 U.S.C. § 794(a). UTSW does not appear to dispute that Salamah is an individual with a disability. In the Fifth Circuit, to satisfy the 'solely' part of the 'solely by reason of' element, the disability must have been the only cause of the . . . conduct" that "trigger[ed]" the discriminatory action. Id. (emphasis added). *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002).

UTSW found Salamah was a person with a disability when it agreed to certain disability-related accommodations but appears to dispute she was "otherwise qualified" due to her failed STEP 1 examination. To be "otherwise qualified" for a postsecondary education program, an individual with a disability must satisfy the program's "essential" requirements, with or without the aid of reasonable accommodations. *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 855 (5th Cir. 1993); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 462 (4th Cir. 2012); *Zukle v. Univ. of Cal.*, 166 F.3d 1041, 1046 (9th Cir. 1999).  An individual does not need to satisfy non-essential program requirements to be "otherwise qualified." *See Brennan v. Stewart*, 834 F.2d 1248, 1261-62 (5th Cir. 1988) (recognizing that the term "otherwise qualified" "cannot refer only to those already capable of meeting all the requirements—or else no reasonable requirement could ever violate [Section] 504").

In *Shaikh*, the Fifth Circuit specifically addressed whether the STEP examination was an "essential requirement," and found the plaintiff's allegations, similar to Salamah's, were sufficient. To refute this proposition, which is itself a question of fact more appropriate for the summary judgment stage, UTSW cites to *Shaikh v. Tex. A&M Univ. Coll. of Med*. 739 Fed. App'x 215, 220 (5th Cir. 2018) to suggest the Fifth Circuit would declare Salamah was not "otherwise qualified." However, the Fifth Circuit acknowledges that allegations Shaikh passed the curriculum, likewise

13

applied here, and passed his third-year clinical rotations with honors. The facts here indicate Salamah was on a similar trajectory, with strong academic performance. The Fifth Circuit agreed Shaikh had adequately pled his qualifications. Salamah has done the same. The Fifth Circuit's decision in *Shaikh* also applies here.

A requirement is "essential" only if "the nature of the program would be fundamentally altered" without it. *Mary Jo C. v. N.Y. State & Local Ret. Sys*., 707 F.3d 144, 158 (2d Cir. 2013). Due to Section 504's remedial purpose, however, judicial deference extends only so far as there is "a factual basis in the record reasonably demonstrating" that the requirement at issue is necessary to "the essential nature of the program." Id.: see also 34 C.F.R. § 104.44(a) ("Academic requirements that the recipient can demonstrate are essential to the instruction being pursued by such student or to any directly related licensing requirement will not be regarded as discriminatory within the meaning of this section."); *Rizzo v.      World    Ctr., Inc.*, 84 F.3d 758, 764 (5th Cir. 1996); *Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 991 (9th Cir. 2007) (en banc). In contrast to a motion for summary judgment, the limited scope of review permitted by a Rule 12(b)(6) motion to dismiss is not well suited to this type of evidence-intensive inquiry.

UTSW undertakes a tortured reading of Salamah's complaint to construe it as alleging the STEP requirement is "essential." Salamah does not dispute she was required to pass the examination – however, nothing in the allegation that it was a requirement concedes it was an *essential* requirement, and only *essential* requirements are relevant to this analysis. UTSW's argument runs directly contrary to Salamah's allegations that the STEP examinations are not even part of the UTSW curriculum, let alone an essential requirement of it.

Salamah was excluded on the basis of her disability because the only reason she was unable to study for and pass the exam was due to being gravely ill and on a medical leave of absence.

14

While there is a degree of deference given to the institutions to set programmatic requirements, students are entitled to reasonable modifications. A post-secondary institution shows that they have engaged in a meaningful individualized assessment of the requirements and the student's request. A landmark case regarding this issue is *Guckenberger v. Boston University*, 957 F. Supp. 306 (D. Mass 1997), where students with learning disabilities challenged the University's "blanket prohibition against course substitutions for mathematics and foreign language." The students pointed to this "draconian accommodations policy," among other things, as evidence of a hostile learning environment and intentional infliction of emotional distress. The court concluded that Boston University had failed to "undertake a diligent assessment of the available options" and ordered the University to propose a "deliberative procedure for considering whether modification of its degree requirement in foreign language would fundamentally alter the nature of its liberal art program."

## VI.  ABROGATION UNDER TITLE II OF THE ADA IS VALID WHERE ADA CLAIMS IMPLICATE CONSTITUTIONAL RIGHTS

Salamah recognizes prior precedent finding that sovereign immunity bars Title II claims. See, *Shah v. Univ. of Tex. Sw. Med. Sch., 54 F. Supp. 3d 681, 688 n.4 (N.D. Tex. 2014) (Fitzwater, C.J.) ("Shah I");* However, as the Fifth Circuit has recently decided, this bar is far from categorical. In *Shaikh v. Tex. A&M Univ. College of Med.,* 739 Fed. Appx. 215, 225, the Fifth Circuit holds: "To determine whether Title II of the ADA is a valid exercise of Congress's authority under § 5 of the Fourteenth Amendment, courts apply the three-part inquiry set forth by the Supreme Court in *United States v. Georgia,* 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006) [citations]. *Shaikh v. Tex. A&M Univ. Coll. of Med.*, 739 F. App'x 215, 224 (5th Cir. 2018)

The first part of the *Georgia* test requires the court to assess whether there was a violation of Title II of the ADA, which Salamah substantively demonstrates in *Section V* herein. At the second

part of the *Georgia* test, the court must determine to what extent such misconduct also violated the Constitution. 546 U.S. at 159. "If the [s]tate's conduct violated both Title II and the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Shaikh*, at p. 224, citing *Hale*, 642 F.3d at 498. Shaikh's arguments failed at this step because Shaikh had not demonstrated a due process violation. *Id.* at p. 225. However, here, unlike Shaikh, Salamah has shown significant procedural irregularities.

The third part of the *Georgia* inquiry requires the court to decide "whether Congress's purported abrogation of sovereign immunity as to that class of conduct"—i.e., conduct that violates Title II of the ADA but does not independently violate the Fourteenth Amendment—"is nevertheless valid." *Georgia*, 546 U.S. at 159; see also *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 81, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000) ("Congress' power 'to enforce' the [Fourteenth] Amendment includes the authority both to remedy and to deter violation of rights guaranteed thereunder by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text."). *Shaikh* at p. 225 "Shaikh, however, has failed to brief any meaningful argument that Congress's purported abrogation is 'nevertheless valid.'" Salamah urges a finding of abrogation in this case because she has demonstrated the conduct was undertaken in a manner that imposes additional hurdles on students who become ill or disabled, precisely the type of arbitrary deprivation of property or liberty the Constitution seeks to protect. This expansion of the scope of abrogation would be in line with decisions in other circuits. See, e.g., *Kiman v. N.H. Dep't of Corr.,* 301 F.3d 13, 24 (1st Cir. 2002) (allowing Title II actions against states "at least as that Title is applied in cases in which a court identifies a constitutional violation by the state"); *Garcia v. SUNY Health Scis. Ctr.*, 280 F.3d 98, 111-12 (2d Cir. 2001) (holding that Title II actions may be brought against states if the "violation was motivated by discriminatory animus or ill will

16

based on the plaintiff's disability"); The Ninth Circuit has asserted that Title II of the ADA abrogates state sovereign immunity after Garrett. *See Hason v. Med. Bd.,* 279 F.3d 1167, 1170-71 (9th Cir. 2001). Salamah urges to the Court to consider a more expansive scope of abrogation to prevent the entire class of persons with disabilities from being prevented from completing their medical education due to illness. The experience of being a patient gives future physicians a measure of understanding and compassion that cannot be taught. It is an asset and should not be an almost-categorical barrier to entry.

### VII.   SALAMAH SEEKS LEAVE TO AMEND.

Generally, leave to refile is preferred over dismissal. *Andrade Enters. v. Cinnaroll Bakeries, Ltd.*, No. SA-03-CA-695-RF, 2003 U.S. Dist. LEXIS 20823, at *5 (W.D. Tex. Oct. 31, 2003); *Hart v. Bayer Corp.*, 199 F.3d 239, 247 (5th Cir. 2000). Plaintiff previously amended to correct an issue with the naming of the parties but has not entered a substantive amendment. Should the court deem any portion of the complaint insufficient, Salamah respectfully requests leave to amend.

Dated: September 17, 2024                     Respectfully Submitted,

*S/ S. Tomiyo Stoner , Esq.*
S. Tomiyo Stoner, Esq.
UNDAUNTED LAW FIRM, P.C.
400 E. Las Colinas Blvd.
Suite 300, Room 91
Irving, Texas 75039
Phone: 844-232-4332
E-mail: tstoner@undauntedlaw.com
***Attorney for Plaintiff Meera Salamah***

17