IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MEERA SALAMAH,                              §
                                           §
          Plaintiff,                       §
                                           §
VS.                                        §        Civil Action No. 3:24-CV-0477-D
                                           §
UT SOUTHWESTERN HEALTH                     §
SYSTEMS, et al.,                           §
                                           §
          Defendant.                       §

MEMORANDUM OPINION
AND ORDER

This is a suit by plaintiff Meera Salamah ("Salamah"), a former medical student who

is the recipient of a lung transplant and suffers from major depressive disorder, against

defendants  the University of Texas Southwestern Medical Center ("UT Southwestern"),

Angela Mihalic, M.D. ("Dr. Mihalic"), and Kevin Klein, M.D. ("Dr. Klein") .  Salamah was

dismissed from UT Southwestern after, *inter alia*, she failed to pass the United States

Medical Licensing Examination ("STEP examination") within the period that UT

Southwestern required.  Salamah brings claims against UT Southwestern, Dr. Mihalic, and

Dr. Klein under 42 U.S.C. § 1983 for denial of due process, in violation of the Fourteenth

Amendment to the United States Constitution, and for disability discrimination under Title

II of the Americans With Disabilities Act, 42 U.S.C. § 12131, *et seq.* ("ADA"), and § 504

of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.* ("Rehabilitation Act").  Defendants move

to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under

Rule 12(b)(6) for failure to state a claim on which relief can be granted.  For the reasons that

follow, the court grants defendants' motion but also grants Salamah leave to replead.

I

Salamah is the recipient of a lung transplant and suffers from major depressive disorder.[1]  She began as a medical student in 2020 but was dismissed from UT Southwestern's medical school program (the "Program") in March 2023.  This lawsuit arises out of Salamah's dismissal.

"After [a] stellar performance during her undergraduate career and obtaining excellent scores on the [Medical College Admission Test] examination, [Salamah] was admitted into the prestigious program at UT Southwestern, where she decided to attend medical school."  Am. Compl. ¶ 17.  "She began her career as a medical student in 2020 and had no academic performance issues."  *Id.* ¶ 18.  In March 2023, however, she was dismissed.

Salamah's Program-related troubles began in February 2022, when she requested a leave of absence.  "Recipients of organ transplants, including [Salamah], can continue to experience complications and potential complications."  *Id.* ¶ 15.  Salamah requested leave in February 2022 "due to transplant complications and major depressive disorder."  *Id.* ¶ 19.  UT Southwestern denied her request, granting her a deferral instead.  This included "a deferral until April 8, 2022 of her requirement to sit for the STEP examination."  *Id.* ¶ 20.

---

[1]The court recounts the background facts favorably to Salamah as the nonmovant.  In deciding a Rule 12 motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable the plaintiff[s].'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (addressing Rule 12(b)(6) standard)).

But Salamah was expected during the deferral to "continue academic work, including preparation for the STEP examination." *Id.* ¶ 20.

Four days after learning of her deferral, "Salamah informed UT Southwestern that she may need additional time, as issues with her physical health were further compounded by related mental health issues stemming from the death of a close family friend suffering from a similar health condition." *Id.* ¶ 22. UT Southwestern assured her that she could "'take her time' in assessing her options." *Id.* ¶ 22. But by March 14, 2022 Salamah was experiencing ongoing complications, and it became apparent that she "would be unable to return to her education as scheduled." *Id.* ¶ 23. Salamah requested that "her status be changed from a deferral to medical leave." *Id.* ¶ 23. On March 24, 2022 she also "submitted a formal request for accommodation due to disability" and "her physician's recommendation that she receive a medical leave of absence." *Id.* ¶ 24.

One month later, on April 22, 2022, UT Southwestern again denied her leave request, granting her instead a "deferral through June 3, 2022." *Id.* ¶ 30. She was still required, however, to sit for the STEP examination during this deferral period. In May 2022 Salamah again requested a formal medical leave of absence, advising UT Southwestern that "the deferral was inadequate." *Id.* ¶ 31. UT Southwestern informed Salamah that "the request would extend her graduation date[,]" and she "promptly . . . agreed to the same." *Id.* ¶ 32. On June 6, 2022 Salamah "was granted what was termed a 'medical leave of absence' for a period of seven months, through the beginning of the Spring semester of 2023. However, this 'leave' still required her to complete the STEP examination with a passing score before

resuming her studies, in addition to other academic and medical treatment requirements." *Id.* ¶ 33.

During Salamah's "requests for leave [of absence], UT Southwestern frequently moved the targets for when her STEP examination would be required, including advancing deadlines for completion, without providing sufficient notice." *Id.* ¶ 35. For example, at one point Salamah was told that "she would have until June of 2023 to take and pass the Step examination"; then, in January 2023 a UT Southwestern official informed her that she only had until February 24, 2023 to do so. *Id.* ¶ 35. Eventually, in March 2023, Salamah was dismissed, "purportedly for failing to complete the STEP examination." *Id.* ¶ 36. She is "now fully able to return to her studies, but has been denied the opportunity to continue at UT Southwestern." *Id.* ¶ 38. And "[d]ue to her dismissal, she is also effectively precluded from continuing her studies at another university." *Id.* ¶ 38.

Salamah filed the instant action against UT Southwestern and Drs. Mihalic and Klein. In her first amended complaint, she asserts claims under 42 U.S.C. § 1983 for deprivation of her property without due process of law, in violation of the Fourteenth Amendment, and for disability discrimination under the ADA and the Rehabilitation Act. Defendants together move to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim on which relief can be granted. Salamah opposes the motion. The court has heard oral argument.

- 4 -

II

The court first considers Salamah's claim against all defendants under 42 U.S.C. § 1983 for denial of due process.

A

UT Southwestern is entitled to Eleventh Amendment sovereign immunity from Salamah's § 1983 claim "because UT Southwestern qualifies for such immunity and Eleventh Amendment immunity has not been waived or abrogated." *Shah v. Univ. of Tex. Sw. Med. Sch.*, 54 F.Supp.3d 681, 689-90 (N.D. Tex. 2014) (Fitzwater, C.J.) (dismissing medical student's § 1983 claim against UT Southwestern as "barred by Eleventh Amendment immunity"); *see also* U.S. Const. amend. XI; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 (1984); *City of Austin v. Paxton*, 943 F.3d 933, 997 (5th Cir. 2019).[2] Accordingly, the court lacks subject matter jurisdiction over Salamah's § 1983 claim against UT Southwestern.

B

The court need not decide whether Drs. Mihalic and Klein are also immune from

---

[2]The Fifth Circuit and judges of this court have held that UT Southwestern is an arm or instrumentality of the State of Texas. *See, e.g., Elhaj-Chehade v. Office of Chief Admin. Hr'g Officer*, 2000 WL 1672679, at *1 (5th Cir. Oct. 16, 2000) (per curiam) ("[UT Southwestern] is an arm of the State."); *Estate of Hernandez v. United States*, 2013 WL 3579487, at *1 (N.D. Tex. July 15, 2013) (Lynn, J.) (reasoning that UT Southwestern is entitled to Eleventh Amendment immunity, and citing cases in support); *Turner v. Univ. of Tex. Sw. Med. Ctr. at Dall.*, 2007 WL 959032, at *2 (N.D. Tex. Mar. 30, 2007) (Lindsay, J.) (concluding that Texas law "strongly indicate[s] that [UT Southwestern] is an arm or instrumentality of the State of Texas for Eleventh Amendment purposes").

Salamah's § 1983 claim because Salamah has not plausibly alleged that she has Article III constitutional standing to bring this claim against them.

1

"Although Article III constitutional standing was not raised by the parties . . . [the court] must—where necessary—raise it *sua sponte*." *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 331-32 (5th Cir. 2002).  The court must dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction[.]"  Rule 12(h)(3).

Article III of the United States Constitution confines the jurisdiction of a federal court to an actual "case[]" or "controvers[y]."  U.S. Const. art. III, § 2.  The standing doctrine implements this constitutional limitation by requiring that a plaintiff establish "a personal stake in the outcome of the controversy as to warrant [her] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [her] behalf."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal quotation marks omitted).  To establish constitutional standing, a plaintiff must demonstrate that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

As the party seeking to invoke this court's jurisdiction, Salamah bears the burden of establishing standing according to the degree of evidence required at the pleading stage of litigation.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001), *abrogated in part on other grounds by*

- 6 -

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014).  "On a motion to dismiss, [the court] presumes that general allegations embrace those specific facts that are necessary to support the claim."  *Lujan*, 504 U.S. at 561 (alteration and internal quotation marks omitted).

2

Assuming *arguendo* that Salamah has plausibly alleged that she suffered an injury in fact that is fairly traceable to Drs. Mihalic and Klein, she lacks constitutional standing to assert her § 1983 claim against them because she has not adequately pleaded that this injury is redressable.

"To satisfy redressability, a plaintiff must show that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  The relief sought needn't completely cure the injury, however; it's enough if the desired relief would lessen it."  *Dobbin Plantersville Water Supply Corp. v. Lake*, 108 F.4th 320, 325-26 (5th Cir. 2024) (citations and internal quotation marks omitted).

Salamah's alleged injuries are her dismissal from UT Southwestern and her consequent inability to continue her medical education elsewhere.  She prays for an injunction ordering that she "be reinstated as a student, or otherwise be permitted to continue her studies."  Am. Compl. ¶ 68.  At the Rule 12(b)(6) stage, she has not pleaded facts from which the court can reasonably infer that it is likely, as opposed to merely speculative, that her injuries will be redressed by a favorable decision.  Salamah alleges that Dr. Mihalic "is the Dean of Medical Students & Associate Dean of Student Affairs for UT Southwestern[,]"

*id.* ¶ 9, and that Dr. Klein "was the Chair of the Student Promotions Committee for UT Southwestern, the committee responsible for approving her discharge," *id.* ¶ 10.  Based on these allegations, it is purely speculative that Dr. Mihalic or Dr. Klein is capable of reinstating Salamah as a student at UT Southwestern or otherwise enabling her to continue her medical school studies.  *See, e.g.*, *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (per curiam) (affirming summary judgment dismissing plaintiff's claim for lack of "standing to pursue injunctive relief because [the defendant] is without authority to redress [the plaintiff's] injuries"), *as revised* (Oct. 9, 2013); *Muslow v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 2020 WL 1864876, at *12 (E.D. La. Apr. 14, 2020) ("If a state official does not possess the power to reinstate an employee, *i.e.* to redress the plaintiff's complaint, then the [*Ex parte Young*] exception is inapplicable."), *modified on unrelated grounds on reconsideration,* 2020 WL 4471519 (E.D. La. Aug. 4, 2020), *aff'd sub nom. Muslow v. La. State Univ. & Agric. & Mech. Coll., Bd. of Supervisors*, 2023 WL 5498952 (5th Cir. Aug. 24, 2023); *Mire v. Bd. of Supervisors of La. State Univ.*, 2017 WL 785439, at *3-4 (E.D. La. Mar. 1, 2017) (granting summary judgment dismissing for lack of constitutional standing plaintiff's claims against doctors where plaintiff failed to establish that injunction would redress injuries by establishing that doctor-defendants had authority to reinstate plaintiff into residency program).  Indeed, when pressed at oral argument, Salamah's counsel relied on what Salamah maintains is the wrongful conduct of Drs. Mihalic and Klein, not on what they can do to redress these wrongs.

Accordingly, the court dismisses Salamah's § 1983 claim against Drs. Mihalic and

Klein for lack of subject matter jurisdiction based on the absence of constitutional standing.

III

The court turns next to Salamah's claims brought under the ADA and the Rehabilitation Act.[3]

A

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[3]Because defendants do not assert sovereign immunity in response to Salamah's ADA and Rehabilitation Act claims, the court may proceed directly to the merits of these claims. *See Wisc. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) (citations omitted) ("The Eleventh Amendment, however, does not automatically destroy original jurisdiction. Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The State can waive the defense. Nor need a court raise the defect on its own. Unless the State raises the matter, a court can ignore it."). But the court expresses no view regarding whether defendants can successfully rely on sovereign immunity at a later point in this litigation.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

B

The ADA is a "broad mandate" of "comprehensive character" and "sweeping purpose" intended "to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life." Title II of the ADA focuses on disability discrimination in the provision of public services. Specifically, Title II, 42 U.S.C. § 12132, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

Section 504 of the Rehabilitation Act prohibits disability discrimination by recipients of federal funding. Like Title II, § 504 provides that no qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

The ADA and the Rehabilitation Act generally are interpreted *in pari materia*. [][] Congress has instructed courts that "nothing in [the ADA] shall be construed to apply a lesser

standard than the standards applied under title V [i.e., § 504] of the Rehabilitation Act . . . or the regulations issued by Federal agencies pursuant to such title."

*Frame v. City of Arlington*, 657 F.3d 215, 223-24 (5th Cir. 2011) (footnotes omitted).

> To establish a claim under either statute in the context of a student excluded from an educational program, a plaintiff must prove that: (1) she has a disability; (2) she is otherwise qualified to participate in the defendant's program; and (3) she was excluded from the program on the basis of her disability. The only difference between the ADA and Rehabilitation Act in the application of these elements concerns the final requirement. Under section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, *solely* by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (emphasis added). The standard in Title II of the ADA more broadly prohibits exclusion "by reason of [a] disability." *Compare* 42 U.S.C. § 12132 with 29 U.S.C. § 794(a). Thus, while section 504 establishes a "sole cause" test for causation, the ADA instead establishes a "motivating factor" test.

*Maples v. Univ. of Tex. Med. Branch at Galveston*, 901 F.Supp.2d 874, 879 (S.D. Tex. 2012) (cleaned up), *aff'd*, 524 Fed. Appx. 93 (5th Cir. 2013); *see also, e.g.*, *Shaikh v. Tex. A&M Univ. Coll. of Med.*, 739 Fed. Appx. 215, 219 (5th Cir. 2018) (per curiam); *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002).

C

Defendants do not appear to dispute that Salamah has plausibly alleged both that she is "disabled" under the ADA and the Rehabilitation Act and that she was excluded from the UT Southwestern Program on the basis of her disability. The parties disagree, however,

- 11 -

about whether Salamah has plausibly pleaded that she is "otherwise qualified" to participate in the Program.[4]  "To be 'otherwise qualified' for a postsecondary education program, an individual with a disability must satisfy the program's 'essential' requirements, with or without the aid of reasonable accommodations.  A requirement is 'essential' if 'the nature of the program would be fundamentally altered' without it."  *Shaikh*, 739 Fed. Appx. at 220 (citations omitted).  An accommodation is "reasonable" if it does not require a "fundamental" or "substantial" modification of the institution's requirements.  *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 858-59 (5th Cir. 1993).

D

Regarding either of Salamah's pleaded theories—i.e., that the examination requirement was not "essential," or that UT Southwestern denied her reasonable request for an accommodation—she has not plausibly alleged that she was "otherwise qualified" to participate in the Program.  Salamah asserts that she has "had no academic performance issues," Am. Compl. ¶ 18, and that she is "now fully able to return to her studies," *id.* ¶ 38.

_____

[4]Defendants also contend that Salamah has not plausibly pleaded her ADA and Rehabilitation Act claims because she "does not allege that [UT Southwestern] intentionally discriminated against her."  D. Br. (ECF No. 10) at 16.  The court disagrees with defendants' position.  It is true that "[a] plaintiff asserting a private cause of action for violations of the ADA or the [Rehabilitation Act] may only recover compensatory damages upon a showing of intentional discrimination."  *Delano-Pyle*, 302 F.3d at 574.  But "[b]ecause damages are only one of several types of relief available under the statute[s], a plaintiff is not required to allege intentional discrimination to state a claim[.]"  *Shaikh*, 739 Fed. Appx. at 223 n.9.  In addition to compensatory damages, Salamah seeks declaratory and injunctive relief.  Accordingly, assuming *arguendo* that she has not plausibly alleged intentional discrimination, this (assumed) deficiency is not fatal to her ADA and Rehabilitation Act claims.

- 12 -

But these conclusory allegations are insufficient to enable the court to draw the reasonable inference that, were the examination requirement eliminated or modified, Salamah could satisfy the Program's essential requirements.  *See, e.g.*, *Shaikh*, 739 Fed. Appx. at 221 ("According to his complaint, Shaikh 'successfully passed all the required curriculum' needed to progress to his third year of medical school and passed his third-year clinical rotations with honors.  These well-pleaded factual allegations plausibly indicate that Shaikh satisfied the program's 'essential' requirements at the time of his dismissal/withdrawal and that he was therefore 'otherwise qualified' to remain in the program and to obtain readmission thereafter."); *Shurb v. Univ. of Tex. Health Sci. Ctr. at Hous.-Sch. of Med.*, 63 F.Supp.3d 700, 708 (S.D. Tex. 2014) (concluding that medical student was not "otherwise qualified" where he "missed both his Gross Anatomy and Histology exams due to health complications and admittedly refused to provide the University with, *inter alia*, his hospital discharge summary and certification from his treating psychiatrist verifying that he was not a danger to himself or others and was fit to resume classes").

Accordingly, the court dismisses Salamah's ADA and Rehabilitation Act claims for failure to state a claim on which relief can be granted.

IV

Although the court is granting defendants' motion to dismiss, it will permit Salamah to replead.

- 13 -

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (alteration omitted) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).

Although Salamah has already filed a first amended complaint, she did so on her own initiative, not (as here) in response to a court order identifying deficiencies in her pleading. It is not apparent that the pleading deficiencies in Salamah's first amended complaint are entirely incurable, and Salamah has not advised the court that she is unwilling or unable to amend in a manner that will avoid dismissal. In fact, in her response, she explicitly requests leave to amend.

\* \* \*

For the reasons explained, the court grants defendants' August 13, 2024 motion to dismiss but also grants Salamah leave to file a second amended complaint within 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

October 29, 2024.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 14 -