IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| MEERA SALAMAH<br>Plaintiff, | ( | 3:24-CV-00477-D |
| | ( | |
| | ( | |
| | ( | |
| VERSUS | ( | DALLAS, TEXAS |
| | ( | |
| | ( | |
| | ( | |
| UT SOUTHWESTERN | ( | |
| HEALTH Systems, et al. | ( | |
| | ( | |
| Defendant. | ( | OCTOBER 22, 2024 |

TRANSCRIPT OF ORAL ARGUMENT

BEFORE THE HONORABLE SIDNEY A. FITZWATER

UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF:

SARAH TOMIYO STONER
Undaunted Law Firm PC
1500 Dragon Street, Suite 160
Dallas, TX 75207
214-415-7340
Email: tstoner@undauntedlaw.com

FOR THE DEFENDANT: MARY QUIMBY
Office of the Attorney General
General Litigation Division
P.O. Box 12548
Capitol Station
Austin, TX 78711
512-475-4092
Email: mary.quimby@oag.texas.gov

Also present: Katie Fearn

COURT REPORTER: PAMELA J. WILSON, RMR, CRR
pam_wilson@txnd.uscourts.gov
1100 Commerce Street, Room 1535
Dallas, Texas 75242
214.662.1557

Proceedings reported by mechanical stenography, transcript produced by computer.

Oral Argument - October 22, 2024

P R O C E E D I N G S

THE CLERK: All rise.

The United States District Court for the Northern District of Texas is now in session, the Honorable Sidney A. Fitzwater presiding.

Let us pray.

God save the United States and this Honorable Court.

THE COURT: Be seated, please.

Good afternoon, counsel.

At this time the court will hear oral argument on the motion to dismiss pending in Salamah versus UT Southwestern.

The court wants to acknowledge the participation of Bridget Rasmussen in today's hearing. She's a student of mine at the SMU School of Law and I welcome her participation.

At this time I believe we'll hear from Ms. Quimby (sic) first. Is that correct?

MS. FEARN: Yes, Your Honor.

THE COURT: You may approach the lectern and begin.

MS. FEARN: Plaintiff Meera Salamah was a medical student at UT Southwestern Medical School. She was dismissed on March 1st of 2023 for failing to pass the United States Medical Licensing Examination or USMLE Step 1 exam.

Just briefly, the Step 1 is a licensing exam taken by

medical students across the country. Its stated purpose is to provide licensing authorities meaningful information from assessments of physician characteristics, including medical knowledge, skills, values, and attitudes that are important to the provision of safe and effective patient care.

Plaintiff alleges that she was denied due process and that her dismissal was a result of disability discrimination.

Establishing -- establishing a disability discrimination claim requires in part that plaintiff establish that she was otherwise qualified to continue in the medical school program, meaning she could meet all of the essential requirements of the medical school. She cannot do so in this case and the pleadings amply demonstrate that because there was an essential requirement of UT Southwestern's medical school that said all students must take and pass the Step 1 examination within a year of the end of a six-week study period.

THE COURT: Counsel, I think that may be a key issue in this. What if she's alleging that the reason she could not satisfy that was disability discrimination?

MS. FEARN: Thank you, Your Honor.

I -- first, I'm not sure that she necessarily demonstrate -- demonstrates that in the complaint. In fact, the pleadings indicate that she was able to take the test and she didn't pass it. She does not allege that she couldn't

pass it because of a disability.

But more importantly I think is the fact that the requirement is essential. And when a requirement of a medical school or a -- a university or, you know, academic body is essential, that means that the university is not required to change it, modify it, even due to a disability. In this case that's -- that's what's happening here. It is an essential requirement that is not -- UT Southwestern was not required to change.

THE COURT: So is it your position then that if there is an essential requirement, even if the person can't comply with that requirement due to disability discrimination, that that exculpates your clients from liability?

MS. FEARN: Yes, Your Honor.

THE COURT: Do you have authority for that proposition?

MS. FEARN: I think the Shake versus Texas A & M University case is instructive. In that case the plaintiff, fairly similarly to here, but there are some distinguishing features --

THE COURT: Yeah, because for one thing, the majority opinion I think in Shake said it was unclear whether I it was an essential requirement or not. I think they said it might be but it might not be, so it was not proper to

dismiss on that basis.

MS. FEARN: Right. And I think the pleadings in that case indicated some ambiguity about whether or not the requirement was essential. For example, there was facts pled in which the plaintiff indicated that he was told at some point that he could withdraw and reapply without first taking the Step 1 again and be readmitted to the medical school. Here there was no such mitigating circumstances or anything that shows that there was any chance of the plaintiff being readmitted without first passing the Step 1 examination.

THE COURT: But -- but, again, I guess what I'm having trouble with is if you have a case -- I mean, for example, Shake cites another case where you have a law student and the law student's GPA prevented that student from being otherwise qualified. I can see that. There was no claim that the GPA problem was due to disability discrimination. I do wonder about a position that says you have to be otherwise qualified, meet an essential requirement, when your allegation is I can't meet it because of disability discrimination.

MS. FEARN: I think in this case the facts do -- or the facts pled indicate that plaintiff had various chances and -- throughout the year. So she completed her six-week study period in February of 2022 and then she had the first deferral of the -- her requirement to take the examination,

then she had a second referral -- deferral, I'm sorry. Then she had a seven-month leave of absence due to an accommodation for a disability. Then after she came back from that medical leave she had just another maybe six to seven-week period of leave. So at each point she was required to return a passing score before she came back to medical school. She was not able to do it, so she was able to -- she was allowed -- UT Southwestern allowed her to continue to attempt or to study or to take time to complete the essential requirement. When it got to the one-year mark, that is when it -- the -- the essential -- that is the essential part of the requirement, that one-year deadline.

THE COURT: Perhaps just one more question and I'll leave you alone on this, counsel.

Is this perhaps a better case for a summary judgment motion rather than a 12(b)(6) motion where we're looking at the pleadings? I mean, indeed, with a summary judgment record you might be able to develop all of what you're saying and when on that, whereas, here we're at the pleading stage.

MS. FEARN: I think we would -- given a chance to develop the fact we would pre -- prevail on that matter, but I do think the pleadings indicate sufficiently that the requirement was essential.

THE COURT: Thank you.

Go ahead with your argument.

MS. FEARN: Sure. Thank you.

In addition to her disability discrimination claim -- or in addition to the otherwise qualified and essential requirement aspect of it, establishing a disability discrimination claim based on a failure to accommodate requires in part that the accommodation be reasonable. An accommodation that requests, again, a change to an essential requirement is not reasonable. A -- an academic institution such as UT Southwestern is not required to change its essential requirements.

Plaintiff also brings a due process claim and she cannot establish a due process claim because the pleadings establish that she had notice of the reason for her dismissal, the failure to pass Step 1 within the year deadline, and had a -- an opportunity to respond. Indeed, she was able to submit a letter to the student promotions committee. A letter was submitted on her behalf and she pleads in her first amended complaint that she exhausted all available appeals.

So regarding plaintiff's disability discrimination claim, the question before this court hinges, again, as you've questioned, the determination of whether UT Southwestern's requirement that all students pass the Step 1 within a year of their study period is an essential requirement of the medical school. The pleadings establish that it was. Since the requirement is essential, plaintiff

was not otherwise qualified for the program because she could not meet the requirement. Her request to effectively be excused from it is unreasonable and UT Southwestern was not required to change that essential requirement, and not doing so was not discriminatory.

The pleadings establish that UT Southwestern's requirement that all students pass the Step 1 within a year of the end of their study period is an essential requirement. An -- a requirement is essential if the program would be fundamentally altered without it.

The dismissal letter which was attached to defendant's motion to dismiss as Exhibit A specifically states that it is -- "It is an essential requirement of the medical school curriculum that students attain a passing score on the Step 1 within one year of the completion of their test prep period. Students who do not meet this requirement with or without an accommodation cannot progress in the curriculum." I think that is the really salient point that you really cannot continue in the medical school curriculum without first passing this test. That shows that it's required. It's a requirement to continue without which you can't be a medical student anymore.

THE COURT: Counsel, but what if she alleges in her amended complaint that this was not essential and the letter attached to the motion to dismiss says it is essential?

What do I do with that at the 12(b)(6) stage?

MS. FEARN: Your Honor, I think her pleadings fairly well establish that she may -- I think she argues in her response to the motion to dismiss that the requirement was not essential, but her pleadings establish that it very much was a requirement. And then the Exhibit A, the dismissal letter takes it a step further and says it's a requirement but also an essential requirement. I don't think those are necessarily contradictory. So I think the court can consider both of those, the allegations and the argument plus the exhibit of the dismissal letter.

The dismissal letter does not state, for example, that students who do not meet this requirement or plaintiff who -- who didn't meet this requirement can take more time and try again or withdraw and reapply to the medical school program. Modifying the requirement would thus fundamentally change the requirements UT Southwestern has set forth in order for its students to move on to the next step in the medical school curriculum.

Briefly, I think the -- excuse me -- the dissent in Shake is illuminating in this case I think when applied here. Judge Brown disagreed with the -- for the majority opinion and she agreed with the District Court dismissal of plaintiff's Rehab Act claim. She found that -- that the court could have very well found that the plaintiff failed to

meet a key academic qualification for continued enrollment in the college, a passing score on the Step 1.

The dissent found certainly a passing score on the first step of a national medical licensing exam would qualify as an essential requirement. And, specifically, the fact that the plaintiff had alleged that his grades were passable does not suffice to state that he met all of the essential requirements. Here plaintiff doesn't even argue that her -- or allege that her academic requirements otherwise met the standards. I think she has one paragraph in the first amended complaint in which she references her academic success or accomplishments up to that point and I believe what she says there is she merely states that she had no academic performance issues. She does not say or allege that she met all of the academic requirements except for the essential one. So there's another distinguishing feature from Shake.

In Shake the Fifth Circuit points to an employment discrimination case to illuminate what it means to be an essential requirement. The Chiari versus City of League City, which states that an otherwise qualified individual cannot be fired due to an inability to perform a nonessential marginal task. The pleadings demonstrate that the Step 1 is not simply a marginal task. It is something that plaintiff and all medical students were required to pass within a year

of completing their six-week study period, which came at the end of their second year of medical school or somewhere in that range. And a requirement without which you can't continue in the program certainly isn't a marginal task.

Regarding plaintiff's due process claim, she has also failed to allege facts that she was deprived of her continued medical school education without process. Process in the academic context just requires the opportunity to be heard at a meaningful time and in a meaningful manner and -- again, in the academic context that means just notice of the dismissal and a grounds or an opportunity to respond.

Plaintiff alleges and argues that her dismissal was not academic but disciplinary because it was based on nonattendance, but she does not allege facts to show that she failed to attend anything or even violated any rule or code of conduct or otherwise did anything that would warrant a disciplinary hearing. She may be conflating her failure to take and pass Step 1 with a failure to attend the task, but that's not born out in the pleadings. The pleadings clearly show that she was not able to continue in the curriculum because she didn't pass the test, not because she didn't attend it.

And even so, I think it's the McGregor case in Louisiana and also Aragona versus Berry in the Fifth Circuit state that even things such as tardiness and attendance and personal

hygiene and things that reflect upon a student's ability to perform professionally can be an academic proceeding rather than a disciplinary matter.

The facts at her first amended complaint does not support or establish that she was dismissed for any other reason than her failure to pass the Step 1, an academic reason. She acknowledges that she was dismissed -- dismissed for failure to pass the test. She does not allege that she broke or violated a rule or that the dismissal was caused by any such rule or policy violation.

Your Honor, her inability to pass the Step 1 --

THE CLERK: That's time.

MS. FEARN: I'm sorry.

Thank you.

THE COURT: Did she leave time for rebuttal?

THE CLERK: Yes. Five minutes.

THE COURT: All right. You've saved time for rebuttal.

All right. Thank you, counsel.

Ms. Stoner.

MS. STONER: Your Honor, thank you for taking time to hear oral arguments in this important case. Meera Salamah who his here with me today has faced severe health challenges that many of us can only imagine. 2018 she was the recipient of a double lung transplant. She lived through a global

pandemic that affected people with lung disabilities disproportionately. Yet, despite these challenges she maintained stellar academic credentials, matriculated to UT Southwestern in August of 2022 -- August of 2020. Her ability to perform exceptionally under these challenging circumstances is precisely why she would make a wonderful addition to the medical profession. Her personal knowledge and experience would undoubtedly allow her to contribute in ways that other doctors may not have the true -- true capacity to do so.

Unfortunately, about two years -- a little bit less than two years into her career, despite having had strong academic performance at UT Southwestern, she began to experience systems of her disability that include reduced lung functions, severe pneumonia. She was hospitalized at points. She needed treatment with intensive steroid infusions. She also experienced the loss of a very close chosen family member who had the same medical condition she did at only 16 years old. All of these things together made the year of 2020 -- 2022 to 2023 among the most challenging in her life.

On February 19th, 2022 she requested medical leave. But her request was denied. She was instead granted only a deferral.

Again, on March 14th, 2022 she requested leave, which was once again denied and she was granted only a deferral.

Prior to the expiration of that deferral she requested and was finally granted, at least technically, at least on paper granted, a medical leave of absence through spring of 2023. And I say that she was given leave on paper because she wasn't truly allowed the time to recuperate. UT Southwestern placed a condition on her return to school and that was the passage of the step examination during a time when she and her medical professionals agreed she was in no position to study. These were serious medical conditions she was facing falling within the scope of disability but also extending beyond what a reasonable person would have been expected to do.

UT Southwestern itself admits that this is a challenging examination and gives students six weeks of continuous time to emphasize studying for the examination without any other academic requirements. So Ms. Salamah is not asking that the court change the requirements for her. She's not asking that they waive her requirement to pass the Step exam. She was simply asking for a true medical leave that did not include meeting demanding academic standards in order to obtain her degree and pursue her education.

One of the key issues in this case is that she had told everyone at UT Southwestern, including Dean Mihalic, that her symptoms were sufficiently severe she was having difficulty completing just basic activities of daily living. And to

require a student who is that ill to stand on equal footing with other students is not acceptable under the ADA and also rises to a level of arbitrary discrimination that may be unconstitutional.

The bottom line here is that when Salamah requested medical leave due to her disability with her physician's support and UT Southwestern's agreement she was entitled to the medical leave, she was dismissed when she failed to pass the examination during her medical leave even though she was taking proactive steps as required by UT Southwestern.

UT Southwestern claims that it has a policy requiring the passage of the Step examination within one year. I have not seen this policy produced to date and I do believe it's a question of fact as to the origin, existence, duration, and so forth of this policy. But if it does exist, the inability or unwillingness to modify the policy is a clear violation of the Rehabilitation Act. Under Section 504 schools must make reasonable modifications to their criteria, policies, practices or procedures when necessary to avoid discrimination on the basis of disability. Refusing to modify the policy is plainly discriminatory as defined by the Rehabilitation Act.

THE COURT: Well, counsel, I think you may be getting into the flip side of what I was asking opposing counsel about, and I would like you to answer the following.

It seems to me that an argument could be made that if you are directly challenging Step 1 as discriminatory that would eliminate it as an essential requirement and therefore you don't fall into -- you don't lose because of lack of otherwise qualified. But you have also made some allegations and claims in your amended complaint that I think don't directly attack Step 1. Would those claims fall away because as to those claims Step 1 is still an essential requirement?

So, in other words, you're not defeating the Step 1 requirement as to those claims?

MS. STONER: It's not the position of Ms. Salamah at all that the Step 1 requirement should not be a part of the curriculum -- part of the -- part of the requirements for graduation or something like that. She just needed true medical leave.

But I think the court raises an interesting suggestion, which is when we get into the test of otherwise qualified and start look can at what's an essential requirement and what's not, I think the Fifth Circuit has somewhat addressed this issue in the Shake case and has determined -- there are two cases that somewhat address the issue, neither of which I think conclusively foreclose it.

Shake clearly demonstrates that the Fifth Circuit is at least open to considering Step as a nonessential requirement in situations that I think are almost identical to my

client's. You know, Shake -- Shake prevailed on the Rehabilitation Act claim at the Fifth Circuit and my client I assume would as well if this case were before the Fifth Circuit.

But there is an interesting question that's raised by that which is in the Shaw case. The plaintiff in that case was in similar procedure -- or similar medical school posture to my client and was actually asking for permission to defer his examination further, after he had completed his second year of medical school. So it's clear to me that not only is it not an essential requirement it might not even be a uniformly applied policy of the university, because certainly in the Shaw decision he was asking for deferral beyond what Ms. Salamah has requested due to medical leave and for -- for different reasons. So I think it's clear that it's not an essential requirement, although I don't think that that's a finding necessary for my case to prevail.

THE COURT: All right. Go ahead.

MS. STONER: But it's a very interesting point. Because I was getting into also the definition of otherwise qualified and I do want to cite a couple of cases on that point in addition to the two I previously noted. So in Brennan v. Stewart, which is a Fifth Circuit case, it's very clear that you cannot essentially -- you cannot state that all these requirements are essential and find one requirement

the student doesn't meet and then say therefore they're not otherwise qualified. The otherwise-qualified test would loose its meaning if the students needed to meet every qualification to get there. If that -- if that follows.

And in -- in this modification it's also clear that even though courts have granted modifications of entire curriculum requirements, including Massachusetts court, for example, that declined to enforce a language requirement. There's several other citations in the brief. There can be significant modifications to curriculum, but that's not what Ms. Salamah is asking for. She's not asking the curriculum be modified. She's simply asking that she have true leave and the ability to take the examination when she's well enough to.

THE COURT: Tying into that, what is it in particular that you are seeking to have Dr. Mihalic and Dr. Klein do?

It's not clear to me why they should be defendants in this case.

MS. STONER: So they were involved in the decision to -- in her dismissal position. I think Dr. Klein, specifically, had a very particular role as the chair of the committee that one of the things you hear on the audio recording when you hear the dismissal hearing is that he is again and again saying I feel so badly for you or I feel

sympathetic to you, but there's this policy, my hands are tied. Those kinds of statements are coming from Dr. Klein. And I think as the chair of the committee making the standard under which she's evaluated completely devoid of any ADA analysis, which is -- which is plainly incorrect, and by being the chair of the committee and reinforcing this policy in front of the other members of the committee, he had a significant impact on the dismissal.

Now, we're still within the statute of limitations and if leave is granted I do anticipate that other members of the student promotions committee may be brought in as well. But that's clearly the committee that decided on the dismissal.

With Dean Mihalic, the reason for her inclusion is that she was the individual who moved -- moved up the requirement to complete the Step examination. So Ms. Salamah contends that she actually had until June of 2023 to pass the examination but Dean Mihalic's decision advanced that date to February of 2023.

THE COURT: Maybe I need to rephrase my question, because what you're now reciting is what you claim they did wrong. I'm asking what they can do in response to your lawsuit. And this even gets into not just immunity, sovereign immunity, but even the redressability element for Article III standing. Is there anything these two -- because you have to have standing as to each party. Is there

anything these two defendants can even do?

MS. STONER: Yes, I believe they can. And this is where discovery would need to be conducted in order to -- to flesh that out more fully, but I do believe that the individuals responsible for her dismissal would be the same individuals who would be best -- best able to redress her complaint. And then if there -- if there are additional individuals that would be needed, such as the other members of the committee, they could still be included in the suit by amending the pleadings.

I do want to -- before we move on to that I do want to say we're in the position -- the plaintiff is in the position where she wants to go back to medical school. She does not want to test the outer bounds of federalism and make this case a constitutional one. She wants to be able to proceed on her case, present it to a judge or jury on the Rehabilitation Act and -- and prevail and return to school or at least have her transcript modified so that she can seek her education elsewhere.

But -- but before we move on I do want to just state that and talk a little bit if the court -- if it pleases the court about the Georgia test and ADA aggregation, because I don't think it's an inevitable conclusion. There are precedents in the Fifth Circuit and previously in this court with Shaw, but I think there's nothing about that finding

that's inevitable, because the third prong of the Georgia test would allow even a nonFourteenth Amendment violation to proceed for reasons such as here. I think there's a tremendous public policy reason to allow her to continue her education.

And I do also want to briefly touch on something that opposing counsel mentioned, which is that this -- this dismissal is disciplinary, because the issue in this case is not whether or not Salamah was able to pass the Step examination. She never really had a fair chance to take it. Even if she did, I don't think it's clear that it's part of UT Southwestern's curriculum because they do not administer the test, they do not write the test, they do not evaluate the performance on the test. So, in essence, it's not even clear that it is an academic requirement to take and pass the Step test. But even to the extent it is, Ms. Salamah never really had a chance to prepare for and study for it comparable to her peers. And I do believe the evidence will demonstrate and I do believe it's a question for summary judgment or for a jury that if she had the opportunity to study and prepare while she's well, which she is now, she would pass.

And on that -- on that note, if there are technical defects the court has identified in the pleadings it would be my suggestion that leave to refile -- to amend is preferred

and would be appropriate here. The only prior amendment in this case was completely nonsubstantive and had to do with the naming of the university so there has been no substantive amendment in this case to date. And for that reason I think it's essential that the court allow Ms. Salamah and students like her to receive their medical education even if a disability presents them from studying for a brief period of time.

THE COURT: Would you address Ex parte Young while you're there at the lectern?

MS. STONER: Yes. So Ex parte Young, it's a very simple test. She has clearly stated that she has an ongoing constitutional concern and that there is an ability to redress it. She has been dismissed. So it's true that her reinstatement may not be -- there may be technical procedural hoops that she needs to jump through to be reinstated but it is also very clear that having the transcript mark that she was dismissed is making it pretty much impossible for her to continue her medical education elsewhere. And so some kind of amendment to her transcript would enable her to proceed at another university even if UT Southwestern would not be able to reinstate her, which is not something we concede, to be clear, but is something it appears opposing counsel has raised in their brief. The state has -- has made that suggestion, although, again, that's a question that I think

would be better examined on a summary judgment standard at least.

Does that -- does that answer the court's question?

THE COURT: It does.

MS. STONER: All right. Thank you, Your Honor.

THE COURT: Do you have anything further that you wish to present?

MS. STONER: Not at this time.

THE COURT: All right. Thank you, counsel.

Rebuttal?

MS. FEARN: Thank you, Your Honor.

I would just like to address a couple of things that plaintiff's counsel just noted, specifically with regard to Dr. Klein and Dr. Mihalic, she's made some arguments today that aren't exactly fleshed out in the -- anywhere in the pleadings about the hearing that was recorded. Those aren't before the court. Those aren't in any of the pleadings. But I think importantly she alleges that Dr. Klein was involved in the dismissal by virtue of his service on the student promotion committee and the first amended complaint actually doesn't clearly allege what, if any, involvement Dr. Mihalic had in the dismissal or on the student promotions committee, but even if -- even assuming that they did, even if they both served on the student promotions committee which was involved in dismissing the plaintiff, the dismissal of the plaintiff

was not a due process violation. The plaintiff does not allege that the student promotions committee failed to give her notice of the reason for her dismissal. The dismissal letter plainly shows that she had the ability to provide a letter to the student promotions committee before they even determined what to do about her academic fate.

It also doesn't allege that -- you know, even if they were involved in her dismissal, they weren't involved -- they didn't deny her notice of the reason for dismissal. They also didn't deprive her of the opportunity to be heard. Those are the two main requirements of an academic dismissal. Neither Dr. Klein nor Dr. Mihalic deprived her of those two aspects, or the whole student promotions committee, or anyone at UT Southwestern for that matter. But I think the pleadings made clear that she had an opportunity -- she understood why she was being dismissed and she had an opportunity to provide a rebuttal both to the student promotions committee and then later in her appeals of the student promotions committee's decision.

I'd also like to address the Stewart citation that plaintiff's counsel just mentioned. UT Southwestern isn't saying that all requirements of the medical school are essential. I think that's shown by if you look at the circumstances and it's clear that she had a whole year to take deferrals, two deferrals, again, seven months of medical

leave, another stent of administrative leave. She was able to take the test during that time. It's not that she wasn't able to pass the test in general, it was that she wasn't able to pass the test by the one-year deadline. That is the benchmark. That is the essential requirement at issue, not any of the others or any other requirements that are before the court.

But also I'd like to address plaintiff's argument that the fact that UT Southwestern didn't write the Step 1 exam or that the Step 1 exam isn't administered by the university, it's a state -- it's a state -- or countrywide licensing exam. That doesn't mean that it's not a part of the curriculum. That doesn't mean that it's not an important part of the academic requirements for the university. And nothing in her pleadings establish otherwise.

Just briefly, to circle back to Shake. The court found in determining that the Step 1 requirement for his medical school, which is not the same as this medical school, for that medical school was not an essential requirement. The court found that nothing in his pleadings indicated that it was an essential requirement.

Again, they -- the pleadings show that he passed all of his curriculum, he took his third-year clerkship, passed with honors. None of those facts are present here. And, in addition, here we even go a step further with a dismissal

letter that clearly and unequivocally states that the Step 1 requirement in the one-year deadline is an essential requirement.

The court in Shake found that just because he had been required to retake the exam during his leave of absence suggests that it was a requirement, not necessarily an essential requirement. But, here again, the pleadings allow this court to go a step further and find that it was indeed an essential requirement for UT Southwestern Medical School.

Thank you.

THE COURT: Thank you, counsel.

MS. FEARN: I'm sorry, one more, if I may.

I would just like to address that plaintiffs -- plaintiff's request to amend the pleadings. I don't think there's -- she can't plead around the fact in the dismissal letter that clearly states that the Step 1 deadline was an essential requirement and therefore an amendment would be futile.

THE COURT: All right. Thank you, counsel.

MS. FEARN: Thank you.

THE COURT: The court appreciates counsels' arguments and will take the matter under advisement.

After I leave the courtroom I'm going to ask that counsel just remain briefly in case the court reporter has any questions. Sometimes spellings of cases are needed for

the record. So if you don't mind just waiting until she has spoken with you, and then once you've done that then you're excused.

At this time then the court will stand in recess.

THE SECURITY OFFICER: All rise.

**INDEX - Oral Argument**


| ORAL ARGUMENT | Page | Line |
|---|---|---|
| MS. FEARN | 3 | 18 |
| MS. STONER | 13 | 15 |
| MS. FEARN | 23 | 23 |

< Dates >
August 13:24
February 6:20, 20:9
February 19th, 2022 14:15
June 20:7
March 14th, 2022 14:18
March 1st 3:22
October 22, 2024 3:1
OCTOBER 22, 2024 1:17

< 1 >
1 3:23, 3:24, 4:14, 6:4, 6:7, 8:10, 8:18, 9:3, 9:10, 10:23, 11:18, 12:13, 13:1, 13:6, 16:19, 16:24, 16:25, 17:1, 17:4, 25:22, 25:23, 26:5, 26:14, 27:4
1100 2:39
12(b)(6 7:12, 9:22
12548 2:4
13 27:26
15 27:26
1500 1:31
1535 2:39
16 14:12
160 1:31
18 27:24

< 2 >
2018 13:19
2020 13:24, 14:13
2022 6:20, 13:24, 14:13
2023 3:22, 14:14, 14:23, 20:7, 20:9
214-415-7340 1:33
214.662.1557 2:41
23 27:28

< 3 >
3 27:24
3: 1:6

< 4 >
4-CV-00477-D 1:6

< 5 >
504 16:10
512-475-4092 2:7

< 7 >
75207 1:32
75242 2:40
78711 2:6

< A >
A. 1:22, 3:5
ability 12:21, 13:24, 19:4, 23:2, 24:17
able 4:22, 7:3, 7:14, 8:11, 12:15, 20:22, 21:6, 21:24, 23:10, 25:14, 25:15, 25:16
absence 6:23, 14:22, 26:18
academic 5:2, 8:4, 10:21, 11:5, 11:7, 11:9, 11:11, 12:3, 12:5, 12:8, 12:22, 13:1, 13:23, 14:6, 15:9, 15:13, 22:5, 24:19, 24:24, 26:2
acceptable 15:20
accommodate 8:1
accommodation 6:23, 8:2, 8:3, 9:13
accomplishments 11:8
acknowledge 3:13
acknowledges 13:2
across 3:25
Act 10:20, 16:10, 16:14, 17:19, 21:7
activities 15:18
actually 17:25, 20:7, 24:8
ADA 15:20, 19:20, 21:13
addition 7:23, 7:24, 14:1, 18:14, 26:13
additional 20:23
address 17:13, 22:23, 23:25, 25:8, 25:21, 27:1
addressed 17:11
administer 22:2
administered 25:23
administrative 25:14
admits 15:6
advanced 20:8
advisement 27:10
affected 13:21
afternoon 3:10
aggregation 21:13
agreed 10:19, 15:2
agreement 15:25
ahead 7:21, 18:10
al 1:15
allegation 6:15
allegations 10:6, 16:22
allege 4:23, 11:5, 11:10, 12:1, 12:9, 13:3, 24:9, 24:15, 24:20
alleged 11:2
alleges 4:5, 9:19, 12:7, 24:6
alleging 4:17
allow 14:3, 21:17, 21:20, 22:19, 26:20
allowed 7:3, 7:4, 14:24
almost 17:17
alone 7:10
altered 9:6
although 18:8, 23:14
ambiguity 5:25
amend 22:14, 27:2
amended 8:13, 9:20, 11:6, 12:24, 16:23, 24:8
amending 21:1
Amendment 21:18, 22:15, 22:18, 23:9, 27:5
among 14:14
amply 4:12
analysis 19:21
answer 16:17, 23:16
anticipate 20:1
appeals 8:14, 25:6
appears 23:12
applied 10:17,

18:4
appreciates 27:9
approach 3:19
appropriate 22:15
Aragona 12:19
arbitrary 15:21
argue 11:4
argues 9:24, 12:7
ARGUMENT 1:21, 3:1, 3:11, 7:21, 10:6, 16:18, 25:21, 27:19, 27:22
arguments 13:17, 24:2, 27:10
around 27:3
Article 20:14
aspect 7:25
aspects 24:25
assessments 4:2
assume 17:20
assuming 24:11
attached 9:7, 9:21
attack 16:23
attain 9:10
attempt 7:4
attend 12:10, 12:13, 12:17
attendance 12:20
attitudes 4:3
Attorney 2:2
audio 19:14
Austin 2:6
authorities 4:1
authority 5:13
available 8:14
avoid 16:12
away 16:24

< B >
back 6:24, 7:2, 21:4, 26:4
badly 19:16
based 8:1, 12:8
basic 15:18
basis 5:23, 16:13
began 14:7
begin 3:19
behalf 8:13
believe 3:16, 11:8, 16:6, 20:18, 20:20, 22:8, 22:9
benchmark 25:18
Berry 12:19
best 20:22
better 7:11, 23:15
beyond 15:4, 18:5
bit 14:5, 21:12
body 5:2
born 12:14
bottom 15:23
bounds 21:5
Box 2:4
Brennan 18:15
Bridget 3:14
brief 19:1, 22:21, 23:13
Briefly 3:24, 10:16, 21:21, 26:4, 27:12
brings 8:7
broke 13:3
brought 20:2
Brown 10:18

< C >
capacity 14:4
Capitol 2:5
care 4:4
career 14:6
case 4:11, 5:4, 5:16, 5:25, 6:9, 6:10, 6:17, 7:11, 10:17, 11:14, 12:18, 13:17, 15:15, 17:12, 17:20, 17:23, 18:9, 18:15, 19:10, 21:5, 21:7, 21:23, 22:16, 22:18, 27:12
cases 17:13, 18:13, 27:13
caused 13:4
certainly 10:24, 11:24, 18:4
chair 19:13, 19:19, 19:22
challenges 13:18, 13:22
challenging 13:25, 14:14, 15:6, 16:19
chance 6:6, 7:16, 21:25, 22:7
chances 6:18
change 5:4, 5:7, 8:3, 8:5, 8:24, 10:12, 15:10
characteristics 4:2
Chiari 11:15
chosen 14:11
circle 26:4
Circuit 11:13, 12:19, 17:11, 17:15, 17:19, 17:21, 18:15, 21:15
circumstances 6:5, 13:25, 25:12
citation 25:8
citations 19:1
cite 18:13
cites 6:10
City 11:15
claim 4:8, 6:12, 7:23, 8:1, 8:7, 8:8, 8:15, 10:20, 11:25, 17:19, 20:11
claims 16:4, 16:22, 16:24, 16:25, 17:2
clear 16:9, 18:2, 18:7, 18:16, 18:22, 19:9, 22:1, 22:4, 23:6, 23:12, 25:3, 25:12
clearly 12:14, 17:15, 20:3, 23:1, 24:9, 26:14, 27:4
CLERK 3:3, 13:7, 13:11
clerkship 26:11
client 17:18, 17:19, 17:25
clients 5:11
close 14:11
code 12:10
college 10:22
coming 19:18
Commerce 2:39
committee 8:12, 19:14, 19:19, 19:22, 19:23, 20:2, 20:3, 20:25, 24:8, 24:10, 24:12, 24:15, 24:18, 25:1, 25:5, 25:6
comparable 22:7
complaint 4:21, 8:14, 9:20, 11:7, 12:24, 16:23, 20:23, 24:8
complete 7:5, 20:6
completed 6:19, 18:1
completely 19:20, 22:16
completing 11:21, 15:18
completion 9:11
comply 5:10

computer 2:46
concede 23:11
concern 23:2
conclusion 21:14
conclusively 17:14
condition 14:12, 14:25
conditions 15:3
conduct 12:11
conducted 20:19
conflating 12:12
consider 10:5
considering 17:16
constitutional 21:6, 23:2
contends 20:6
context 12:3, 12:5
continue 4:9, 7:4, 9:15, 9:17, 11:23, 12:15, 21:20, 23:8
continued 10:22, 12:1
continuous 15:7
contradictory 10:5
contribute 14:3
correct 3:17
Counsel 3:10, 4:16, 7:10, 9:19, 13:14, 16:15, 16:17, 21:22, 23:12, 23:22, 24:1, 25:9, 26:24, 27:7, 27:11
counsels 27:9
country 3:25
countrywide 25:24
couple 18:13, 23:25
courtroom 27:11
courts 18:23
credentials 13:23
criteria 16:11
CRR 2:37
curriculum 9:10, 9:15, 10:15, 12:15, 17:5, 18:23, 19:2, 19:3, 22:2, 25:25, 26:11
curriculum. 9:13

< D >
daily 15:18
Dallas 1:3, 1:10, 1:32, 2:40
date 16:6, 20:8, 22:18
deadline 7:8, 8:10, 25:17, 26:15, 27:4
Dean 15:16, 20:4, 20:8
decided 20:3
decision 18:5, 19:11, 20:8, 25:7
declined 18:25
defeating 17:1
defects 22:13
DEFENDANT 1:17, 2:1, 9:7
defendants 19:9, 20:17
defer 17:25
deferral 6:21, 6:22, 14:17, 14:19, 14:20, 18:5
deferrals 25:13
defined 16:14
definition 18:12
degree 15:14
demanding 15:13
demonstrate 4:12, 4:21, 11:18, 22:8
demonstrates 4:21, 17:15
denied 4:5, 14:16, 14:19
deny 24:22
deprive 24:23
deprived 12:1, 24:25
despite 13:22, 14:6
determination 8:17
determined 17:12, 24:19
determining 26:5
develop 7:14, 7:17
devoid 19:20
different 18:7
difficulty 15:17
directly 16:19, 16:23
disabilities 13:21
disability 4:6, 4:7, 4:18, 4:24, 5:4, 5:10, 6:13, 6:16, 6:24, 7:23, 7:25, 8:15, 14:8, 15:4, 15:24, 16:13, 22:21
disagreed 10:18
disciplinary 12:8, 12:12, 12:23, 21:23
discovery 20:19
discrimination 4:6, 4:7, 4:18, 5:10, 6:13, 6:16, 7:23, 8:1, 8:15, 11:14, 15:21, 16:12
discriminatory 9:1, 16:14, 16:19
dismiss 3:12, 5:23, 9:8, 9:21, 9:25
dismissal 4:6, 8:9, 9:7, 10:2, 10:7, 10:8, 10:19, 12:5, 12:7, 13:4, 19:12, 19:15, 19:24, 20:3, 20:21, 21:23, 24:7, 24:10, 24:13, 24:16, 24:21, 24:22, 24:24, 26:13, 27:3
dismissed 3:21, 12:25, 13:2, 16:1, 23:3, 23:7, 25:4
dismissing 24:13
disproportionately 13:22
dissent 10:16, 10:24
distinguishing 5:17, 11:12
District 1:1, 1:2, 1:23, 3:4, 3:5, 10:19
Division 1:3, 2:3
doctors 14:4
doing 8:25
done 27:15
double 13:20
Dragon 1:31
due 4:5, 5:4, 5:10, 6:13, 6:23, 8:7, 8:8, 11:17, 11:25, 15:24, 18:6, 24:14
duration 16:7
during 15:1, 16:2, 25:15, 26:18

< E >
education 12:2, 15:14, 21:9, 21:20, 22:20, 23:8
effective 4:4
effectively 8:23
element 20:14
eliminate 16:20
elsewhere 21:10, 23:8
Email 1:34, 2:8
emphasize 15:8
employment 11:13
enable 23:9
end 4:15, 9:4, 11:21
enforce 18:25
enough 19:5
enrollment 10:22
entire 18:23
entitled 15:25
equal 15:19
essence 22:4
essentially 18:16
establish 4:8, 8:8, 8:20, 9:2, 9:24, 10:1, 12:25, 26:3
Establishing 4:7, 7:25
et 1:15
evaluate 22:3
evaluated 19:20
everyone 15:16
evidence 22:8
Ex 22:23, 22:25
exactly 24:3
exam 3:23, 3:24, 10:25, 15:11, 25:22, 25:23, 25:24, 26:18
Examination 3:23, 4:14, 6:7, 6:21, 15:1, 15:7, 15:8, 16:2, 16:5, 18:1, 19:5, 20:6, 20:8, 21:25
examined 23:15
example 6:1, 6:10, 10:8, 18:24
except 11:11
exceptionally 13:25
exculpates 5:11
excuse 10:16
excused 8:23, 27:16
exhausted 8:14
Exhibit 9:8, 10:2, 10:6
exist 16:8
existence 16:7
expected 15:5
experience 14:2, 14:7
experienced 14:11
expiration 14:20
extending 15:4
extent 22:6

< F >
faced 13:18
facing 15:3
fact 4:21, 4:25, 7:17, 11:1, 16:7, 25:22, 27:3
facts 6:1, 6:17, 6:18, 12:1, 12:9, 12:24, 26:12
failed 10:21, 12:1, 12:10, 16:1, 24:15
failing 3:22
failure 8:1, 8:10, 12:12, 12:13, 13:1, 13:2
fair 21:25
fairly 5:17, 9:23
fall 16:21, 16:24
falling 15:3
family 14:11
fate 24:19
FEARN 2:17, 3:18, 3:20, 4:19, 5:12, 5:15, 5:24, 6:17, 7:16, 7:22, 9:23, 13:8, 23:24, 26:25, 27:8, 27:24, 27:28
feature 11:12
features 5:18
federalism 21:5
feel 19:16
Fifth 11:13, 12:19, 17:11, 17:15, 17:19, 17:20, 18:15, 21:15
finally 14:21
find 18:17, 26:21
finding 18:9, 21:16
fired 11:17
Firm 1:30
first 3:17, 4:20, 6:3, 6:7, 6:20, 8:13, 9:15, 10:24, 11:6, 12:24, 24:8
Fitzwater 1:22, 3:6
Five 13:11
flesh 20:20
fleshed 24:3
flip 16:16
following 16:17
follows 18:21
footing 15:19
foreclose 17:14
forth 10:13, 16:8
found 10:20, 10:21, 10:24, 26:4, 26:8, 26:17
front 19:23
fully 20:20
functions 14:8
fundamentally 9:6, 10:12
futile 27:6

< G >
General 2:2, 2:3, 25:16
Georgia 21:13, 21:17
gets 20:13
getting 16:16, 18:12
give 24:15
given 7:16, 14:23
gives 15:7
global 13:20
God 3:8
GPA 6:11, 6:13
grades 11:2
graduation 17:6
granted 14:16, 14:19, 14:21, 14:22, 18:23, 20:1
grounds 12:6
guess 6:8

< H >
hands 19:17
happening 5:5
HEALTH 1:15, 13:18
hear 3:11, 3:16, 13:17, 19:14, 19:15
heard 12:3,

24:23
**hearing** 3:14, 12:12, 19:15, 24:4
**hinges** 8:16
**Honor** 3:18, 4:19, 5:12, 9:23, 13:6, 13:16, 23:18, 23:24
**Honorable** 1:22, 3:5, 3:8
**honors** 26:12
**hoops** 23:5
**hospitalized** 14:9
**hygiene** 12:21

< I >
**identical** 17:17
**identified** 22:13
**III** 20:14
**ill** 15:19
**illuminate** 11:14
**illuminating** 10:17
**imagine** 13:19
**immunity** 20:13, 20:14
**impact** 19:24
**important** 4:3, 13:17, 26:1
**importantly** 4:25, 24:6
**impossible** 23:7
**inability** 11:17, 13:6, 16:8
**include** 14:8, 15:12
**included** 20:25
**including** 4:2, 15:16, 18:24
**inclusion** 20:4
**incorrect** 19:21
**INDEX** 27:19
**indicate** 4:22, 6:18, 7:18
**indicated** 5:25, 6:2, 26:8
**individual** 11:16, 20:5
**individuals** 20:21, 20:22, 20:24
**inevitable** 21:14, 21:16
**information** 4:1
**infusions** 14:10
**instead** 14:16
**institution** 8:4
**instructive** 5:16
**intensive** 14:10
**interesting** 17:8, 17:22, 18:11
**involved** 19:11, 24:6, 24:12, 24:21
**involvement** 24:9
**issue** 4:16, 17:12, 17:13, 21:23, 25:18
**issues** 11:10, 15:15
**itself** 15:6

< J >
**J.** 2:37
**Judge** 1:23, 10:17, 21:7
**judgment** 7:11, 7:13, 22:9, 23:15
**jump** 23:5
**jury** 21:7, 22:9

< K >
**Katie** 2:17
**key** 4:16, 10:21, 15:15
**kind** 23:8
**kinds** 19:18
**Klein** 19:8, 19:12, 19:18, 24:2, 24:6, 24:25
**knowledge** 4:3, 14:2

< L >
**lack** 16:21
**language** 18:25
**later** 25:6
**Law** 1:30, 3:15, 6:10, 6:11
**lawsuit** 20:13
**League** 11:15
**least** 14:21, 17:16, 21:8, 23:15
**leave** 6:23, 6:25, 7:1, 7:10, 13:10, 14:15, 14:18, 14:22, 14:23, 15:12, 15:24, 16:1, 16:2, 17:7, 18:6, 19:4, 20:1, 22:14, 25:14, 26:18, 27:11
**lectern** 3:19, 22:24
**less** 14:5
**letter** 8:12, 9:7, 9:20, 10:2, 10:7, 10:8, 24:17, 24:18, 26:14, 27:4
**level** 15:21
**liability** 5:11
**Licensing** 3:23, 3:24, 4:1, 10:25, 25:24
**life** 14:14
**limitations** 19:25
**Line** 15:23, 27:22
**Litigation** 2:3
**little** 14:5, 21:12
**lived** 13:20
**living** 15:18
**look** 17:10, 25:11
**looking** 7:12
**loose** 18:19
**lose** 16:21
**loss** 14:11
**Louisiana** 12:18
**lung** 13:20, 13:21, 14:8

< M >
**main** 24:24
**maintained** 13:23
**majority** 5:20, 10:18
**manner** 12:4
**marginal** 11:17, 11:19, 11:24
**mark** 7:6, 23:6
**MARY** 2:1
**mary.quimby@oag.texas.gov** 2:8
**Massachusetts** 18:24
**matriculated** 13:23
**matter** 7:17, 12:23, 25:2, 27:10
**Mcgregor** 12:18
**mean** 6:9, 7:13, 25:25, 26:1
**meaning** 4:10, 18:20
**meaningful** 4:1, 12:4
**means** 5:3, 11:14, 12:5
**mechanical** 2:45
**Meera** 1:6, 3:20, 13:17
**meet** 4:10, 6:15, 6:16, 8:22, 9:12,

10:9, 10:10,
10:21, 18:18,
18:20
**meeting** 15:13
**member** 14:11
**members** 19:23,
20:1, 20:24
**mentioned**
21:22, 25:9
**merely** 11:9
**met** 11:3, 11:5,
11:10
**Mihalic** 15:16,
19:7, 20:4,
20:8, 24:2,
24:9, 24:25
**mind** 27:14
**mine** 3:14
**minutes** 13:11
**mitigating** 6:5
**modification**
18:22
**modifications**
16:11, 18:23,
19:2
**modified** 19:3,
21:9
**modify** 5:4,
16:9, 16:13
**Modifying** 10:12
**months** 25:13
**motion** 3:12,
7:12, 9:8,
9:21, 9:25
**move** 10:14,
21:2, 21:11
**moved** 20:5
**MS** 3:16, 3:18,
3:20, 4:19,
5:12, 5:15,
5:24, 6:17,
7:16, 7:22,
9:23, 13:8,
13:15, 13:16,
15:9, 17:3,
18:6, 19:2,
20:6, 22:6,
22:19, 23:24,
26:25, 27:8,
27:24, 27:26,
27:28
**MS. STONER**
17:3, 18:11,
19:11, 20:18,
22:25, 23:18,
23:21

< N >
**naming** 22:17
**national** 10:25
**necessarily**
4:20, 10:4,
26:19
**necessary**
16:12, 18:9
**need** 20:10,
20:19
**needed** 14:9,
17:6, 18:20,
20:24, 27:13
**needs** 23:5
**Neither** 17:13,
24:24
**next** 10:14
**nonattendance**
12:9
**None** 26:12
**nonessential**
11:17, 17:16
**nonfourteenth**
21:18
**nonsubstantive**
22:16
**nor** 24:25
**Northern** 1:2,
3:4
**note** 22:12
**noted** 18:14,
24:1
**nothing** 21:16,
26:2, 26:8
**notice** 8:9,
12:5, 24:16,
24:22

< O >
**O.** 2:4
**obtain** 15:13
**Office** 2:2
**OFFICER** 27:18
**old** 14:12
**once** 14:19,
27:15
**One** 5:19, 7:9,
9:11, 11:6,
11:11, 15:15,
16:5, 18:17,
19:14, 21:6,
26:25
**one-year** 7:6,
7:8, 25:17,
26:15
**ongoing** 23:1
**open** 17:16
**opinion** 5:20,
10:18
**opportunity**
8:11, 12:3,
12:6, 22:10,
24:23, 25:3,
25:4
**opposing** 16:16,
21:22, 23:12
**ORAL** 1:21, 3:1,
3:11, 13:17,
27:19, 27:22
**order** 10:13,
15:13, 20:19
**origin** 16:7
**others** 25:19
**otherwise** 4:9,
6:12, 6:14,
7:24, 8:21,
11:5, 11:16,
12:11, 16:21,
17:9, 18:12,
18:19, 26:3
**otherwise-quali
fied** 18:19
**outer** 21:5

< P >
**Page** 27:22
**pam_wilson@txnd
.uscourts.gov**
2:38
**PAMELA** 2:37
**pandemic** 13:21
**paper** 14:22,
14:23
**paragraph** 11:6
**part** 4:8, 7:7,
8:2, 17:4,
17:5, 22:1,
25:25, 26:1
**parte** 22:23,
22:25
**participation**
3:13, 3:15
**particular**
19:7, 19:13
**party** 20:16
**pass** 3:22,
4:14, 4:23,
4:24, 8:10,
8:18, 9:3,
11:20, 12:13,
12:16, 13:1,
13:3, 13:6,
15:11, 16:1,
20:7, 21:24,
22:5, 22:11,
25:16, 25:17
**passable** 11:2
**passage** 15:1,
16:5
**passed** 26:10,
26:11
**passing** 6:7,
7:1, 9:10,
9:16, 10:23,
10:24
**patient** 4:4
**PC** 1:30
**peers** 22:8
**pending** 3:12
**people** 13:21
**perform** 11:17,
12:22, 13:25
**performance**
11:10, 14:7,
22:4
**Perhaps** 7:9,
7:11
**period** 4:15,
6:20, 6:25,
8:19, 9:4,

9:11, 11:21, 22:21
permission 17:25
person 5:9, 15:5
personal 12:20, 14:2
physician 4:2, 15:24
placed 14:25
plainly 16:14, 19:21, 24:17
Plaintiff 1:7, 1:29, 3:20, 4:5, 4:8, 5:16, 6:2, 6:6, 6:18, 8:7, 8:15, 8:21, 10:9, 10:19, 10:21, 11:2, 11:4, 11:19, 11:25, 12:7, 17:23, 21:3, 24:1, 24:13, 24:14, 25:9, 25:21, 27:2
plaintiffs 27:1
plead 27:3
pleading 7:15
pleadings 4:12, 4:22, 5:24, 7:13, 7:18, 8:8, 8:20, 9:2, 9:23, 10:1, 11:18, 12:14, 21:1, 22:13, 24:4, 24:5, 25:2, 26:3, 26:8, 26:10, 26:20, 27:2
pleads 8:13
please 3:9
pleases 21:12
pled 6:1, 6:18
plus 10:6
pneumonia 14:9
point 6:3, 7:1, 9:14, 11:8, 18:11, 18:14
points 11:13, 14:9
policies 16:11
policy 13:5, 16:4, 16:6, 16:8, 16:9, 16:13, 18:4, 19:17, 19:22, 21:19
position 5:8, 6:14, 15:2, 17:3, 19:12, 21:3
posture 17:24
practices 16:12
pray 3:7
pre 7:17
precedents 21:14
precisely 14:1
preferred 22:14
prep 9:11
prepare 22:7, 22:10
present 2:17, 21:7, 23:20, 26:12
presents 22:21
presiding 3:6
pretty 23:7
prevail 7:17, 18:9, 21:8
prevailed 17:18
prevented 6:11
previously 18:14, 21:15
Prior 14:20, 22:15
proactive 16:3
problem 6:13
procedural 23:4
procedure 17:24
procedures 16:12
proceed 21:6, 21:18, 23:9
proceeding 12:22
Proceedings 2:45
Process 4:5, 8:7, 8:8, 11:25, 12:2, 24:14
produced 2:46, 16:6
profession 14:2
professionally 12:22
professionals 15:2
program 4:9, 8:22, 9:5, 10:11, 11:24
progress 9:13
promotion 24:8
promotions 8:12, 20:2, 24:10, 24:12, 24:15, 24:18, 25:1, 25:5, 25:6
prong 21:17
proper 5:22
proposition 5:14
provide 4:1, 24:17, 25:4
provision 4:4
public 21:19
purpose 3:25
pursue 15:14

< Q >
qualification 10:22, 18:20
qualified 4:9, 6:12, 6:15, 7:24, 8:22, 11:16, 16:22, 17:9, 18:13, 18:19
qualify 10:25
question 7:9, 8:16, 16:7, 17:22, 20:10, 22:9, 23:14, 23:16
questioned 8:17
questions 27:13
Quimby 2:1, 3:16

< R >
raised 17:22, 23:12
raises 17:8
range 11:23
Rasmussen 3:14
rather 7:12, 12:22
readmitted 6:4, 6:7
really 9:14, 21:25, 22:6
reapply 6:3, 10:11
reason 4:17, 8:9, 12:25, 13:1, 20:4, 21:19, 22:18, 24:16, 24:22
reasonable 8:2, 8:4, 15:5, 16:11
reasons 18:7, 21:18
Rebuttal 13:10, 13:13, 23:23, 25:5
receive 22:20
recess 27:17
recipient 13:19
reciting 20:11
record 7:13, 27:14
recorded 24:4
recording 19:15
recuperate 14:24
redress 20:22, 23:2
redressability 20:14
reduced 14:8
references 11:7
referral 6:22
refile 22:14

reflect 12:21
Refusing 16:13
regard 24:1
Regarding 8:15, 11:25
Rehab 10:19
Rehabilitation 16:10, 16:14, 17:19, 21:7
reinforcing 19:22
reinstate 23:11
reinstated 23:5
reinstatement 23:4
remain 27:12
rephrase 20:10
reported 2:45
REPORTER 2:37, 27:12
request 8:23, 14:16, 27:2
requested 14:15, 14:18, 14:20, 15:23, 18:6
requests 8:3
require 15:19
required 5:3, 5:6, 7:1, 8:5, 8:24, 9:16, 11:20, 16:3, 26:18
requirements 4:10, 8:6, 10:13, 11:4, 11:5, 11:11, 15:9, 15:10, 17:5, 18:17, 18:24, 24:24, 25:10, 25:19, 26:2
requires 4:8, 8:2, 12:3
requiring 16:4
respond 8:11, 12:6
response 9:25, 20:12
responsible 20:21
result 4:6
retake 26:18
return 7:1, 14:25, 21:8
rise 3:3, 27:18
rises 15:21
RMR 2:37
role 19:13
Room 2:39
rule 12:10, 13:4, 13:5

< S >
safe 4:4
Salamah 1:6, 3:12, 3:20, 13:17, 15:9, 15:23, 17:3, 18:6, 19:2, 20:6, 21:24, 22:6, 22:19
salient 9:14
SARAH 1:29
satisfy 4:18
save 3:8
saved 13:12
saying 7:14, 19:16, 25:10
says 6:14, 9:21, 10:3, 11:8
School 3:15, 3:21, 4:9, 4:11, 4:13, 5:2, 6:4, 7:2, 8:20, 9:9, 9:15, 10:11, 10:14, 11:22, 12:2, 14:25, 17:24, 18:2, 21:4, 21:8, 25:10, 26:6, 26:7, 26:22
schools 16:10
scope 15:4
score 7:2, 9:10, 10:23, 10:24
seated 3:9
second 6:22, 11:22, 18:1
Section 16:10
SECURITY 27:18
seek 21:9
seeking 19:7
seems 16:18
seen 16:6
serious 15:3
served 24:12
service 24:7
session 3:5
set 10:13
seven 25:13
seven-month 6:23
seven-week 6:25
several 18:25
severe 13:18, 14:9, 15:17
Shake 5:15, 5:20, 6:10, 10:16, 11:12, 11:13, 17:12, 17:15, 17:18, 26:4, 26:17
Shaw 17:23, 18:5, 21:15
show 12:9, 12:15, 26:10
shown 25:11
shows 6:6, 9:16, 24:17
sic 3:16
side 16:16
Sidney 1:22, 3:5
significant 19:1, 19:24
similar 17:24
similarly 5:17
simple 23:1
simply 11:18, 15:12, 19:4
situations 17:17
six 6:25, 15:7
six-week 4:15, 6:19, 11:21
skills 4:3
SMU 3:15
Sometimes 27:13
somewhat 17:11, 17:13
somewhere 11:22
sorry 6:22, 13:8, 26:25
Southwestern 1:14, 3:12, 3:21, 4:13, 5:6, 7:4, 8:5, 8:17, 8:24, 9:2, 10:13, 13:24, 14:7, 14:24, 15:6, 15:16, 15:25, 16:3, 16:4, 22:2, 23:10, 25:2, 25:9, 25:22, 26:22
sovereign 20:13
specifically 9:8, 11:1, 19:13, 24:1
spellings 27:13
spoken 27:15
spring 14:22
stage 7:15, 9:22
stand 15:19, 27:17
standard 19:19, 23:15
standards 11:6, 15:13
standing 20:15, 20:16
start 17:10
state 10:8, 11:3, 12:19, 18:16, 21:11, 23:13, 25:24
stated 3:25, 23:1
statements 19:18
States 1:1, 1:23, 3:4, 3:8, 3:22, 9:8,

11:9, 11:16, 26:14, 27:4
Station 2:5
statute 19:25
stellar 13:23
stenography 2:45
stent 25:14
Step 3:23, 3:24, 4:14, 6:4, 6:7, 8:10, 8:18, 9:3, 9:10, 10:3, 10:14, 10:23, 10:25, 11:18, 12:13, 13:1, 13:6, 15:1, 15:11, 16:5, 16:19, 16:24, 16:25, 17:1, 17:4, 17:16, 20:6, 21:24, 22:5, 25:22, 25:23, 26:5, 26:13, 26:14, 26:21, 27:4
steps 16:3
steroid 14:10
Stewart 18:15, 25:8
STONER 1:29, 13:15, 13:16, 27:26
Street 1:31, 2:39
strong 14:6
student 3:14, 3:21, 6:10, 6:11, 8:12, 9:18, 12:21, 15:19, 18:18, 20:2, 24:7, 24:10, 24:12, 24:15, 24:18, 25:1, 25:5, 25:6
Students 3:25, 4:14, 8:18, 9:3, 9:10, 9:12, 10:9, 10:14, 11:20, 15:7, 15:20, 18:20, 22:19
study 4:15, 6:20, 7:4, 8:19, 9:4, 11:21, 15:2, 22:7, 22:10
studying 15:8, 22:21
submit 8:11
submitted 8:13
substantive 22:17
success 11:7
suffice 11:3
sufficiently 7:18, 15:17
suggestion 17:8, 22:14, 23:13
suggests 26:19
suit 20:25
Suite 1:31
summary 7:11, 7:13, 22:9, 23:15
support 12:24, 15:25
sympathetic 19:17
symptoms 15:17
Systems 1:15, 14:8

< T >
tardiness 12:20
task 11:18, 11:19, 11:24, 12:13
technical 22:12, 23:4
technically 14:21
test 4:22, 9:11, 9:16, 12:16, 13:3, 17:9, 18:19, 21:5, 21:13, 21:17, 22:3, 22:4, 22:6, 23:1, 25:15, 25:16, 25:17
Texas 1:2, 1:10, 2:40, 3:5, 5:15
third 21:17
third-year 26:11
though 16:2, 18:23
throughout 6:19
tied 19:18
today 3:14, 13:18, 24:2
together 14:13
TOMIYO 1:29
took 26:11
touch 21:21
TRANSCRIPT 1:21, 2:46, 21:9, 23:6, 23:9
transplant 13:20
treatment 14:10
tremendous 21:19
trouble 6:9
true 14:4, 15:12, 17:6, 19:4, 23:3
truly 14:24
try 10:10
tstoner@undauntedlaw.com 1:34
two 14:5, 14:6, 17:12, 18:14, 20:15, 20:16, 24:24, 24:25, 25:13
TX 1:32, 2:6
Tying 19:6

< U >
unclear 5:20
unconstitutional 15:22
Undaunted 1:30
understood 25:3
undoubtedly 14:3
unequivocally 26:14
Unfortunately 14:5
uniformly 18:4
United 1:1, 1:23, 3:4, 3:8, 3:22
University 5:2, 5:3, 5:16, 18:4, 22:17, 23:10, 25:23, 26:2
unreasonable 8:24
until 20:7, 27:14
unwillingness 16:9
USMLE 3:23
UT 1:14, 3:12, 3:21, 4:13, 5:6, 7:3, 8:5, 8:17, 8:24, 9:2, 10:13, 13:23, 14:7, 14:24, 15:6, 15:16, 15:25, 16:3, 16:4, 22:1, 23:10, 25:1, 25:9, 25:22, 26:22

< V >
v. 18:15
values 4:3
various 6:18
VERSUS 1:10, 3:12, 5:15, 11:15, 12:19
violated 12:10, 13:4
violation 13:5, 16:9, 21:18, 24:14

**virtue** 24:7

< W >

**waiting** 27:14
**waive** 15:11
**wants** 3:13, 21:4, 21:6
**warrant** 12:11
**ways** 14:3
**weeks** 15:7
**welcome** 3:15
**whereas** 7:15
**whether** 5:20, 5:25, 8:17, 21:24
**whole** 25:1, 25:12
**will** 3:11, 22:8, 27:10, 27:17
**WILSON** 2:37
**wish** 23:20
**withdraw** 6:3, 10:11
**within** 4:15, 8:10, 8:18, 9:3, 9:11, 11:20, 15:4, 16:5, 19:25
**without** 6:3, 6:7, 9:6, 9:12, 9:15, 9:17, 11:23, 12:2, 15:8
**wonder** 6:14
**wonderful** 14:1
**words** 17:1
**write** 22:3, 25:22

< Y >

**year** 4:15, 6:19, 8:10, 8:18, 9:3, 9:11, 11:20, 11:22, 14:13, 16:5, 18:2, 25:12
**years** 14:5, 14:6, 14:12
**Young** 22:23, 22:25

C E R T I F I C A T I O N

I, PAMELA J. WILSON, CSR, certify that the foregoing is a transcript from the record of the proceedings in the foregoing entitled matter.

I further certify that the transcript fees format comply with those prescribed by the Court and the Judicial Conference of the United States.

This the 22nd day of November, 2024.

s/Pamela J. Wilson

PAMELA J. WILSON, RMR, CRR
Official Court Reporter
The Northern District of Texas
Dallas Division