IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MEERA SALAMAH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:24-CV-0477-D |
| | § | |
| UT SOUTHWESTERN MEDICAL | § | |
| CENTER, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this disability discrimination action by former medical student Meera Salamah ("Salamah"), defendants University of Texas Southwestern Medical Center ("UT Southwestern"), Angela Mihalic, M.D. ("Dr. Mihalic"), Kevin Klein, M.D. ("Dr. Klein"), Arlene Sachs, Ph.D. ("Dr. Sachs"), and Andrew Lee, M.D. ("Dr. Lee") together move to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim on which relief can be granted, and to stay discovery. Salamah opposes the motions. For the reasons that follow, the court grants in part and denies in part the motion to dismiss, denies as moot the motion to stay discovery, and grants Salamah leave to replead.

I

The relevant background facts of this case are largely set out in a prior memorandum opinion and order and need not be repeated at length for purposes of deciding defendants' motions. *See Salamah v. UT Sw. Health Sys.* ("*Salamah I*"), 2024 WL 4606802, at *1-2

(N.D. Tex. Oct. 29, 2024) (Fitzwater, J.).

After the court granted defendants' motion to dismiss Salamah's first amended complaint and granted her leave to replead, *id.* at *6, she filed a second amended complaint. Her operative second amended complaint asserts a failure-to-accommodate claim against UT Southwestern under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.* ("Rehabilitation Act"); a disability discrimination claim against Drs. Mihalic, Klein, Sachs, and Lee, in their official capacities, under Title II of the Americans With Disabilities Act, 42 U.S.C. § 12131, *et seq.* ("Title II")[1]; and a retaliation claim against Drs. Mihalic and Sachs, in their individual capacities, under the Americans With Disabilities Act of 1990, 42 U.S.C. § 12203(b) ("ADA retaliation").

Defendants move to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim on which relief can be granted, and to stay discovery. Salamah opposes the motions, which the court is deciding on the briefs, without oral argument.

## II

The court begins, as it must, by determining whether it has subject matter jurisdiction.[2]

_____

[1]Salamah's second amended complaint also asserts her Title II claim against various members of the Student Promotions Committee, in their official capacities. Salamah has since stipulated to the dismissal of these defendants.

[2]*See In re Canion*, 196 F.3d 579, 584 (5th Cir. 1999) ("Federal courts must be assured of their subject matter jurisdiction at all times."); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack

A

Subject matter jurisdiction is a court's "statutory or constitutional power to adjudicate" claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (emphasis omitted). Because federal courts are "courts of limited subject matter jurisdiction," *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 821 (5th Cir. 2022), their power of adjudication is subject to challenge under Rule 12(b)(1). When contesting subject matter jurisdiction under Rule 12(b)(1), a party can make a facial attack or a factual attack. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). When, as here, the party merely files a Rule 12(b)(1) motion, the attack is facial, and the court looks only at the sufficiency of the allegations in the complaint and assumes them to be true. *Id.* "The burden of proof . . . is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). If the allegations are sufficient to allege jurisdiction, the court must deny the motion and entertain the claim. *Paterson*, 644 F.2d at 523. If the allegations are insufficient, however, the court must grant the motion and dismiss the claim. *Id.*

Defendants maintain that the court lacks subject matter jurisdiction over Salamah's Title II claim against Drs. Mihalic, Klein, and Sachs because Salamah lacks Article III constitutional standing to bring this claim against these defendants, and these defendants are entitled to Eleventh Amendment sovereign immunity from this claim. To the extent it is lacking, the court will also address whether it has subject matter jurisdiction over Salamah's

_____

before addressing any attack on the merits.").

Title II claim against Dr. Lee.[3]

B

The court turns first to Article III constitutional standing.[4]

1

Article III of the United States Constitution confines the jurisdiction of a federal court to an actual "case[]" or "controvers[y]." U.S. Const. art. III, § 2. The standing doctrine implements this constitutional limitation by requiring that a plaintiff establish "a personal stake in the outcome of the controversy as to warrant [her] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [her] behalf." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal quotation marks omitted). To establish constitutional standing, a plaintiff must demonstrate that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

---

[3]Although defendants do not challenge the court's subject matter jurisdiction over Salamah's Title II claim against Dr. Lee, the court must ascertain, *sua sponte*, if necessary, whether it has subject matter jurisdiction. *See Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013) ("As a court of limited jurisdiction, a federal court must affirmatively ascertain subject-matter jurisdiction before adjudicating a suit."). The court will only discuss such jurisdiction, however, to the extent it is lacking. *See Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999) ("[A] court *sua sponte* must raise the issue if it discovers it lacks subject matter jurisdiction.").

[4]The court may address challenges to its subject matter jurisdiction in any order. *See NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393 (5th Cir. 2015).

- 4 -

A plaintiff must establish standing "for each form of relief that is sought." *Reule v. Jackson*, 114 F.4th 360, 367 (5th Cir. 2024) (quoting *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017)), *cert. denied*, 2025 WL 889158 (U.S. Mar. 24, 2025). With regard to her Title II claim against Drs. Mihalic, Klein, and Sachs, Salamah seeks either of two forms of mandatory relief: (1) an injunction commanding defendants to take the requisite actions to enable her to continue her medical education at UT Southwestern, or, alternatively, (2) an injunction commanding defendants to issue a statement that clarifies the reasons for Salamah's dismissal so that it does not bar her from continuing her medical education elsewhere.[5]

2

The court considers first whether Salamah has pleaded standing to pursue the first form of relief for which she prays: an injunction commanding defendants to take the requisite actions to enable her to continue her medical education at UT Southwestern.

Defendants maintain that Salamah has not pleaded traceability or redressability regarding this claim for relief. That is, defendants contend that Salamah has not plausibly

---

[5]Although "form of relief sought" more familiarly denotes the "type of relief sought," such as injunctive relief or damages, *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), it also denotes variations of a singular type of relief, such as two injunctions that command different affirmative acts, *see, e.g.*, *Davis v. FEC*, 554 U.S. 724, 733-34 (2008) (explaining that plaintiff's standing to seek injunction against enforcement of one provision of a statute did not automatically confer standing to seek injunction against enforcement of another provision of that statute); *City of Los Angeles v. Lyons*, 461 U.S. 95, 126 n.19 (1983) (Marshall, J., dissenting) (criticizing the majority for inquiring into, not only plaintiff's "standing to seek injunctive relief as opposed to damages," but also his standing to seek the injunction prayed for).

alleged that the injury that this injunctive relief is calculated to redress is (1) fairly traceable to the challenged conduct of Drs. Mihalic, Klein, or Sachs, or (2) redressable by issuance of the requested injunction against them. The court is not persuaded by this position.

To satisfy traceability, "a plaintiff must establish that there is 'a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Reule*, 114 F.4th at 367 (alteration adopted) (quoting *Bennett v. Spear*, 520 U.S. 154, 167 (1997)). "To satisfy redressability, a plaintiff must show that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. The relief sought needn't completely cure the injury, however; it's enough if the desired relief would lessen it." *Dobbin Plantersville Water Supply Corp. v. Lake*, 108 F.4th 320, 325-26 (5th Cir. 2024) (citations and internal quotation marks omitted).

The first form of relief for which Salamah prays is calculated to redress her inability to continue her medical education at UT Southwestern as a result of her allegedly discriminatory dismissal. Concerning this injury's traceability to the challenged conduct of Drs. Mihalic, Klein, and Sachs, and the capability of the requested injunction to redress this injury, Salamah alleges the following: Dr. Mihalic is "Dean of Medical Students & Associate Dean of Student Affairs" and "has authority over student academic policies, including authority to modify academic requirements and reinstate students." 2d Am. Compl. (ECF No. 24) ¶ 10. Dr. Klein is "Chair of the Student Promotions Committee for UT Southwestern" and "has the authority to recommend the modification of any academic policy

or to waive certain requirements." *Id.* ¶ 12.  Dr. Sachs is "Director of Student Academic Support Services for UT Southwestern" and "has authority over determination with regard to available accommodations for students with disabilities." *Id.* ¶ 11.  After Drs. Mihalic and Sachs "learned of [Salamah's] failure on the Step 1 examination. . . , they invited her to study for and retake the examination[.]" *Id.* ¶ 39.  But when Salamah learned that she would need to be hospitalized due to further complications, she "immediately requested accommodations from Dr. Mihalic and . . . Dr. Sachs," *id.* ¶ 40, who "immediately placed her on administrative leave, a precursor to dismissal," *id.* ¶ 41.  "Moreover, during Salamah's requests for leave, [Dr. Sachs, with the knowledge of Dr. Mihalic,] moved the targets for when her Step examination would be required, including advancing deadlines for completion[.]" *Id.* ¶ 42.  Eventually, "[t]he Student Promotions Committee voted to dismiss Ms. Salamah" for failing to timely pass the Step Examination.  *Id.* ¶ 13.

From these allegations, the court can reasonably infer a causal connection between Salamah's discriminatory dismissal and consequent inability to continue her medical education at UT Southwestern and the challenged conduct of Drs. Mihalic, Klein, and Sachs. Salamah has plausibly alleged that the failure of Drs. Mihalic and Sachs to grant Salamah an accommodation with respect to the Step Examination led to her dismissal for failing to timely pass the Step Examination.  And Dr. Klein allegedly participated in Salamah's dismissal by chairing the committee that voted to dismiss her without exercising his authority to waive, or recommend the modification of, UT Southwestern's Step Examination requirement.

From these allegations, the court can also reasonably infer that it is likely, as opposed

to merely speculative, that issuance of the requested injunction against Drs. Mihalic, Klein, or Sachs would redress Salamah's injury. Salamah has plausibly alleged that Drs. Mihalic, Klein, and Sachs have the authority to take actions that would enable her to continue her medical education at UT Southwestern. For example, Drs. Mihalic and Klein are alleged to possess the authority to modify or waive UT Southwestern's Step Examination requirement. And Drs. Mihalic and Sachs allegedly have the authority to grant Salamah an appropriate accommodation regarding this requirement. Issuance of an injunction commanding Drs. Mihalic, Klein, or Sachs to take those actions therefore would redress Salamah's injury of being unable to continue her medical education at UT Southwestern because of her allegedly discriminatory dismissal.[6]

---

[6]Defendants appear to contend that enjoining Drs. Mihalic, Klein, and Sachs to modify, waive, or grant Salamah an accommodation concerning the Step Examination requirement cannot redress her inability to continue her medical education at UT Southwestern. This is so, they appear to reason, because any such actions regarding the Step Examination requirement cannot benefit her unless Dr. Lee overturns the decision of the Student Promotions Committee to dismiss her. If this is defendants' position, the court declines to accept it.

Defendants fail to consider that the redressability determination pertinent to Salamah's Title II claim against Drs. Mihalic, Klein, and Sachs presupposes that Dr. Lee would overturn the decision of the Student Promotions Committee to dismiss Salamah. This is why: the redressability determination assumes a favorable decision on Salamah's Title II claim against Drs. Mihalic, Klein, and Sachs. To presuppose a favorable decision on Salamah's Title II claim against Drs. Mihalic, Klein, and Sachs, the court must also assume a favorable decision on Salamah's Title II claim against Dr. Lee (because, at least at this stage of the litigation, the liability of Drs. Mihalic, Klein, Sachs, and Lee for Salamah's Title II claim appears to be an all-or-nothing proposition—either all are liable, or none is). And to presuppose a favorable decision on Salamah's Title II claim against Dr. Lee is to assume that the court will command that Dr. Lee overturn the decision of the Student Promotions Committee to dismiss Salamah.

Accordingly, Salamah has pleaded Article III standing to bring her Title II claim against Drs. Mihalic, Klein, and Sachs to the extent she seeks an injunction commanding defendants to take the requisite actions to enable her to continue her medical education at UT Southwestern.

3

The court considers next whether Salamah has pleaded standing to pursue the second form of relief for which she prays: an injunction commanding defendants to issue a statement that clarifies the reasons for her dismissal.

Defendants contend that, because Salamah has "alleged no facts showing that she has any medical school applications pending, or that she is imminently about to apply to other medical schools," Ds. Reply (ECF No. 49) at 2, she has not plausibly alleged an injury that is likely to be redressed by this injunctive relief. The court agrees.

A plaintiff's standing to pursue injunctive relief that is calculated to redress a future injury depends on whether that future injury is imminent, as opposed to merely conjectural. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010). In the case of a dismissed medical student seeking injunctive relief that is calculated to redress her inability to attend medical school elsewhere, the student "is not required to apply to, and be rejected by, another medical school[.]" *Shah v. Univ. of Tex. Sw. Med. Sch.*, 129 F.Supp.3d 480, 492 (N.D. Tex. 2015) (Fitzwater, J.), *aff'd*, 668 Fed. Appx. 88 (5th Cir. Aug. 16, 2016) (per curiam) (adopting "the district court's opinion *in toto*"). But she must allege facts from which the court can reasonably infer that it is imminent, as

- 9 -

opposed to merely conjectural, that she will apply to other medical schools and be rejected because of her dismissal. *See id.*

Regarding her inability to continue her medical education elsewhere, Salamah alleges that she "is now fully able to return to her studies, but has been denied the opportunity to continue at UT Southwestern. Due to her dismissal, she is also effectively precluded from continuing her studies at another university." 2d Am. Compl. (ECF No. 24) ¶ 46. Salamah alleges that, "[a]mong other things, UT Southwestern's status as 'dismissed' precludes her from continuing her medical education at any institution," *id.* ¶ 108; and that "a statement by the Student Promotions Committee, Dr. Klein, Dean Lee, and/or the other individually named Defendants which clarifies the reasons for Ms. Salamah's dismissal would prevent the dismissal from operating as a complete bar to the continuation of Ms. Salamah's studies at another institution." *Id.* ¶ 110. The court cannot reasonably infer from these allegations that it is imminent, as opposed to merely conjectural, that Salamah will apply to other medical schools and be rejected because of her dismissal. *Compare Shah*, 129 F.Supp.3d at 492 (citation omitted) (concluding that dismissed medical student plausibly alleged that inability to continue medical school elsewhere was imminent injury in fact "by pleading that he is 'about to start' applying to other universities, and that, once he does so, defendants will disclose information regarding his two [Physicianship Evaluation Forms] and dismissal, resulting in harm to his professional reputation and preventing him from being accepted at another medical school").

Accordingly, Salamah has not pleaded Article III standing to bring her Title II claim

- 10 -

against Drs. Mihalic, Klein, and Sachs to the extent she seeks an injunction commanding

defendants to issue a statement clarifying the reasons for her dismissal.

The court also raises *sua sponte* that, for the same reason, Salamah has not pleaded

Article III standing to bring her Title II claim against Dr. Lee to the extent she seeks this

relief.[7]  The court therefore dismisses this claim for relief without prejudice.[8]

C

The court now turns to defendants' assertion of Eleventh Amendment sovereign

immunity.[9]

With limited exceptions, the Eleventh Amendment to the United States Constitution

protects the "sovereign immunity" of the states and their officers against non-consensual

private suits in federal court.  *See* U.S. Const. amend. XI; *City of Austin v. Paxton*, 943 F.3d

---

[7]*See supra.* n. 3; *see also Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985) (per curiam) ("United States District Courts . . . have the responsibility to consider the question of subject matter jurisdiction *sua sponte* if it is not raised by the parties[.]"); *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th Cir. 2002) ("[W]e must—where necessary—raise [Article III constitutional standing] *sua sponte*.").

[8]*Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 452 (5th Cir. 2022) ("Ordinarily, when a [claim] is dismissed for lack of jurisdiction, including lack of standing, it should be without prejudice.").

[9]Salamah maintains that Rule 12(g)(2) bars defendants from raising this defense in this successive Rule 12 motion because it "was available to [defendants] but omitted from its earlier motion."  P. Resp. (ECF No. 42) at 11.  But Rule 12(g)(2) does not apply to the assertion of sovereign immunity because that defense relates to the court's subject matter jurisdiction, which may be challenged at any time.  *Hoskins v. Kaufman Indep. Sch. Dist.*, 2003 WL 22078234, at *1 (N.D. Tex. Sept. 4, 2003) (Fitzwater, J.); *see also Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (explaining that Eleventh Amendment sovereign immunity is jurisdictional); *Watson v. Texas*, 261 F.3d 436, 440 (5th Cir. 2001) (same).

- 11 -

993, 997 (5th Cir. 2019). One notable exception—the *Ex parte Young* exception—"allows private parties to bring 'suits for injunctive or declaratory relief against individual state officials acting in violation of federal law.'" *City of Austin*, 943 F.3d at 997. The *Ex parte Young* exception is predicated on the "legal fiction" that "a state official is 'not the State for sovereign-immunity purposes' when 'a federal court commands [him or her] to do nothing more than refrain from violating federal law.'" *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020) (quoting *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011)). The *Ex parte Young* exception applies if the complaint (1) seeks relief properly characterized as prospective (2) for an ongoing violation of federal law (3) against officials having some connection with the alleged violation. *See Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022); *Cantu Servs., Inc. v. Roberie*, 535 Fed. Appx. 342, 344-45 (5th Cir. 2013).

Defendants maintain that Drs. Mihalic, Klein, and Sachs[10] are entitled to sovereign immunity from Salamah's Title II claim because she has not plausibly alleged that they have "some connection" with the alleged Title II violation.[11] State official defendants have a

---

[10]Defendants do not assert that Dr. Lee is entitled to sovereign immunity from Salamah's Title II claim. Because Eleventh Amendment sovereign immunity is only quasi-jurisdictional, the court need not address Dr. Lee's potential immunity *sua sponte*. *See Wisc. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998).

[11]Defendants also contend that UT Southwestern is entitled to Eleventh Amendment sovereign immunity from Salamah's Title II claim. The court need not address this contention, however, because Salamah does not assert her Title II claim against UT Southwestern.

sufficient connection with the alleged ongoing violation of federal law to satisfy *Ex parte Young* if, for the purposes of Article III constitutional standing, the ongoing violation of federal law alleged by the plaintiff is traceable to the individual conduct of the state official defendants and redressable by an injunction directed to that conduct. *See Jackson v. Wright*, 82 F.4th 362, 369 (5th Cir. 2023) (observing that "[t]he traceability and *Ex parte Young* ['connection' issue] involve similar questions," and inferring from fact that, for purposes of Article III constitutional standing, plaintiff's injuries were traceable to state official defendants' conduct and redressable by requested injunctive relief that *Ex parte Young*'s "connection" requirement was also satisfied); *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 401 (5th Cir. 2020) (same); *Mi Familia Vota v. Ogg*, 105 F.4th 313, 329 n.11 (5th Cir. 2024) ("The 'significant[] overlap' between standing and our *Ex parte Young* enforcement connection guideposts primarily rests with the traceability and redressability components of standing."); *Scott*, 28 F.4th at 672 (identifying as "guideposts" for *Ex parte Young*'s "connection" requirement that an official has "more than 'the general duty to see that the laws [or policies] of the state are implemented,'" an official has "the particular duty to enforce the statute [or policy] in question and a demonstrated willingness to exercise that duty," and enjoining the official's enforcement has the capacity to "stop any ongoing constitutional violation"). *See also Washington v. McLane*, 2025 WL 400030, at *2 (5th Cir. Feb. 5, 2025) (per curiam) (analyzing standing and sovereign immunity together under similar circumstances); *Whole Woman's Health v. Jackson*, 595 U.S. 30, 52 n.1 (2021) (Thomas, J., concurring in part, dissenting in part) ("[P]etitioners also have not shown injury or

- 13 -

redressability for many of the same reasons they cannot satisfy *Ex parte Young*."); *Okpalobi v. Foster*, 244 F.3d 405, 439 (5th Cir. 2001) (en banc) (Benavides, J., concurring in part, dissenting in part) (arguing that connection requirement has been "subsumed" by standing doctrine).[12]

The court has already concluded that the ongoing violation that Salamah asserts—a Title II violation based on her allegedly discriminatory dismissal from UT Southwestern—is traceable to the individual conduct of Drs. Mihalic, Klein, and Sachs, and redressable by an injunction directed to that conduct. The court therefore concludes that Salamah has plausibly pleaded a sufficient connection between the alleged conduct of Drs. Mihalic, Klein, and Sachs and the alleged ongoing violation of Title II to satisfy *Ex parte Young*.

---

[12]In addition to being well-supported by Fifth Circuit precedent, the court's formulation adequately performs the function of *Ex parte Young*'s "connection" requirement. *Ex parte Young*'s requirement that state official defendants have "some connection" with the alleged violation of federal law is a device for ferreting out suits that attempt an end run around the states' Eleventh Amendment sovereign immunity by "merely making [the official] a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157. Suits against state official defendants who lack a sufficient connection to the alleged ongoing violation of federal law do not indulge the "legal fiction" of *Ex parte Young* that a suit against an official for his or her individual conduct in violation of federal law is not functionally a suit against the state itself because when a state official acts in violation of federal law, she acts "without the authority of, and [] [] does not affect, the state in its sovereign or governmental capacity," and thus the official's conduct "is simply an illegal act upon the part of a state official," for which she is "stripped of h[er] official or representative character and is subjected in h[er] person to the consequences of h[er] individual conduct." *Id.* at 159; *see also Okpalobi*, 244 F.3d at 421 ("[T]he necessary fiction of *Young* requires that the defendant state official be acting, threatening to act, or at least have the ability to act."). The court's formulation—in allowing suits for prospective non-monetary relief that redress an ongoing violation of federal law that is traceable to the individual conduct of state official defendants by targeting those defendants' *ultra vires* conduct—ably filters out end-run suits that do not indulge *Ex parte Young*'s fiction.

Accordingly, the court sustains in part and rejects in part defendants' jurisdictional challenges. The court concludes that Salamah has plausibly pleaded that she has Article III constitutional standing to bring her Title II claim against Drs. Mihalic, Klein, and Sachs to the extent she seeks an injunction requiring defendants to permit her to continue her medical education at UT Southwestern. And, applying *Ex parte Young*, the court concludes that Salamah's Title II claim for prospective relief against Drs. Mihalic, Klein, and Sachs in their official capacities is not barred by Eleventh Amendment sovereign immunity. Defendants' motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction is therefore granted in part and denied in part.[13]

III

The court considers next whether Salamah has stated a claim on which relief can be granted.

A

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the

_____

[13]The court therefore denies as moot defendants' second motion to stay discovery, which is based on the contention, which the court declines to accept, that the court lacks subject matter jurisdiction over Salamah's claims against the state official defendants. *See Chavez v. De La Paz*, 156 Fed. Appx. 694, 696-97 (5th Cir. 2005) (per curiam) ("[B]ecause we affirm the denial of qualified immunity defense at this stage, the district court's ruling on the Officer's motion for a protective order to stay discovery is moot."). The denial of the requested stay is without prejudice to defendants' filing another motion to stay discovery if they elect to take an interlocutory appeal from the court's denial of sovereign immunity and the stay motion is timely.

light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

B

The court turns first to Salamah's Title II claim against Drs. Mihalic, Klein, Sachs, and Lee, in their official capacities.

To state a claim under Title II of the ADA "in the context of a student excluded from an educational program, a plaintiff must [plausibly allege] that: (1) she has a disability; (2)

- 16 -

she is otherwise qualified to participate in the defendant[s'] program; and (3) she was excluded from the program on the basis of her disability." *Maples v. Univ. of Tex. Med. Branch at Galveston*, 901 F.Supp.2d 874, 879 (S.D. Tex. 2012) (cleaned up), *aff'd*, 524 Fed. Appx. 93 (5th Cir. 2013); *see also, e.g., Shaikh v. Tex. A&M Univ. Coll. of Med.*, 739 Fed. Appx. 215, 219 (5th Cir. 2018) (per curiam); *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002).

Defendants maintain that Salamah has not stated a Title II claim on which relief can be granted because she has not plausibly alleged that she is "otherwise qualified" to participate in UT Southwestern's Program. "To be 'otherwise qualified' for a postsecondary education program, an individual with a disability must satisfy the program's 'essential' requirements, with or without the aid of reasonable accommodations. A requirement is 'essential' if 'the nature of the program would be fundamentally altered' without it." *Shaikh*, 739 Fed. Appx. at 220 (citations and footnote omitted). An accommodation is "reasonable" if it does not require a "fundamental" or "substantial" modification of the institution's requirements. *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 858 (5th Cir. 1993).

Salamah has plausibly alleged that she is "otherwise qualified" to participate in the program. She alleges that: "she successfully completed the first two years of medical school. . . . and received the highest mark available in every class she took," 2d Am. Compl. ¶ 22; "UT Southwestern dismissed [her] despite her academic excellence, her ability to meet all program requirements with reasonable accommodation, the Step timing requirement not

being essential to the program, and her medical clearance to return to studies," *id.* ¶ 44; her "dismissal occurred despite her demonstrated ability to complete medical school and excel as a physician," *id.* ¶ 48; "peers in her cohort who received lower marks, including multiple failing grades, were allowed to progress," *id.* ¶ 59; "[s]tudents, who were not hospitalized, were allowed to progress to their third year even after failing multiple classes and failing Step 1," *id.*; and she "affirmatively pleads that she meets every one of the essential requirements set forth by UT Southwestern's own documentation of the essential requirements for its medical school," *id.* ¶ 64. From these allegations, the court can reasonably infer "that, were the examination requirement eliminated or modified, Salamah could satisfy the Program's essential requirements." *Salamah I*, 2024 WL 4606802, at *6 (collecting supporting authority).[14]

Accordingly, the court declines to dismiss Salamah's Title II claim.

C

The court now considers Salamah's Rehabilitation Act claim against UT

---

[14]Defendants contend in a conclusory footnote in their initial brief, and in their reply brief that, Salamah is not "otherwise qualified" to participate in UT Southwestern's program because completion of the Step Examination in the time period allotted is an "essential requirement" of the program. The court declines to address this contention because it was raised for the first time in defendants' reply. *See Hee Sook Nam v. Tex Net, Inc.*, 2021 WL 535852, at *6, n.4 (N.D. Tex. Feb. 12, 2021) (Scholer, J.) (collecting cases in support of the proposition that district court need not consider contentions that are not adequately briefed), *Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) (citing *Senior Unsecured Creditors' Comm. of First Republic Bank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.)) ("[T]he court will not consider an argument raised for the first time in a reply brief."), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008) (per curiam).

Southwestern.[15]

To state a failure-to-accommodate claim under the Rehabilitation Act, a plaintiff must plausibly allege: "(1) [she] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered institution; and (3) the covered institution failed to make reasonable accommodations for such known limitations." *Jin Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 Fed. Appx. 214, 215 (5th Cir. 2015) (per curiam) (citing *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013)). Defendants maintain that Salamah has not plausibly pleaded that UT Southwestern owed her a "duty to accommodate" under the second prong.[16]

A covered institution's duty to accommodate is triggered when it knows of the plaintiff's disability and consequential limitations.  *See Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 237 (5th Cir. 2017).  A covered institution is chargeable with knowledge of the plaintiff's disability and its consequential limitations if the plaintiff specifically identifies the disability and resulting limitations and requests an accommodation in "direct and specific"

---

[15]Defendants "do not argue that [UT Southwestern] is immune from claims under the [Rehabilitation Act]."  Ds. Br. (ECF No. 29) at 8.

[16]To the extent defendants also maintain that Salamah has not plausibly pleaded the first prong—that she is a "qualified individual with a disability"—because she is not "otherwise qualified" to participate in UT Southwestern's program, that contention fails for the reasons discussed *supra* at § 3(B) and note 14.  *See Frame v. City of Arlington*, 657 F.3d 215, 223-24 (5th Cir. 2011) (en banc) (explaining that Title II and Rehabilitation Act are generally interpreted *in pari materia*); *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 696 (5th Cir. 2014) (evaluating whether plaintiff was a "qualified individual with a disability" under rubric for determining whether they were "otherwise qualified").

terms. *Id.* at 236.[17]  Defendants maintain that Salamah has not plausibly pleaded that she requested an accommodation in "direct and specific terms" because she did not request an accommodation with regard to the Step Examination requirement in particular, and she did not follow UT Southwestern's procedures for submitting accommodations requests.  The court disagrees.

First, it was not necessary for Salamah to request an accommodation concerning the Step Examination requirement in particular in order to request an accommodation in terms sufficiently direct and specific to trigger UT Southwestern's duty to accommodate her disability regarding that requirement.  Although the Rehabilitation Act does not demand "clairvoyance" on the part of the covered entity, *id.* at 237, the "plaintiff need not request, or even know, the particular reasonable accommodation [s]he ultimately requires," *id.* at 237 n.11.  Rather, she need only request an accommodation with sufficient specificity to initiate the "flexible, interactive process" by which she and the covered institution may devise a reasonable accommodation.  *Id.*  For example, a "police detainee with a broken leg" need not "specifically request a gaze nystagmus test; it is enough for him to ask generally for an alternative to the one-leg stand."  *Id.*  Here, by comparison, Salamah's general requests for a medical leave of absence that would pause her studies while she recovered from her transplant-related complications were sufficiently direct and specific to initiate the flexible,

_____

[17]"When a plaintiff fails to request an accommodation in this manner, [s]he can prevail only by showing that 'the disability, resulting limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents." *Windham*, 875 F.3d at 237.

interactive process by which she and UT Southwestern might have devised a reasonable accommodation pertinent to the Step Examination requirement.

Second, it was unnecessary for Salamah to follow all of UT Southwestern's procedures for submitting accommodation requests to ask for an accommodation in sufficiently direct and specific terms to trigger UT Southwestern's duty to accommodate. Defendants cite *Pickett v. Texas Tech University Health Sciences Center*, 37 F.4th 1013 (5th Cir. 2022), for the proposition that a Rehabilitation Act plaintiff must follow all of a covered institution's procedures for submitting accommodations requests to charge that institution with knowledge of the plaintiff's disability and resulting limitations, and therefore trigger its duty to accommodate. *Pickett*, however, stands for the much narrower proposition that a Rehabilitation Act plaintiff does not plausibly allege that she requested an accommodation in terms sufficiently direct and specific to trigger a covered institution's duty to accommodate when it appears on the face of the complaint that she failed to follow the institution's procedures for submitting accommodations requests, *and, as a result,* the institution cannot reasonably be charged with knowledge of the plaintiff's disability and its consequential limitations. *Id.* at 1032-33. The *Pickett* panel concluded that a graduate student plaintiff failed to state a failure-to-accommodate claim under the Rehabilitation Act because, *inter alia*, it appeared on the face of her complaint that she had directed her accommodations request to a professor, despite knowing that the institution's procedures

- 21 -

required that such requests be submitted to its "ADA office."[18]  *Id.* at 1033.  The panel reasoned that the institution could not reasonably be charged with knowledge of the plaintiff's disability and its consequential limitations under these circumstances, where there could be no interactive process for devising reasonable accommodations because the institution had not been notified to begin with.  *Id.*  Here, by contrast, defendants have not identified anything on the face of the complaint that suggests that Salamah failed to follow UT Southwestern's procedures such that it could not reasonably be charged with knowledge of her disability and its resulting limitations.[19]  To the contrary, Salamah has plausibly alleged that UT Southwestern was aware that she was hospitalized for transplant-related complications and, consequently, had requested a pause in her studies.  Under these

_____

[18]The panel performed this analysis under step one of the *United States v. Georgia*, 546 U.S. 451 (2006), test for determining whether Congress had validly abrogated sovereign immunity.  *See Pickett*, 37 F.4th at 1032.  Although the panel did not do so in the context of a Rule 12(b)(6) motion to dismiss, the case is instructive nonetheless because the inquiries overlap.  *See id.* at 1032 (evaluating under *Georgia*'s step one whether the plaintiff had stated a claim for relief); *see also Block v. Tex. Bd. of L. Examiners*, 952 F.3d 613, 618 n.12 (5th Cir. 2020) ("[W]e have consistently determined whether the plaintiff stated a claim at [*Georgia*'s first step].").

[19]Instead, defendants append to their motion to dismiss UT Southwestern's Policy Handbook, and maintain that Salamah has not plausibly alleged that she complied with the requirement that students "submit medical documentation to support accommodation requests."  Ds. Br. (ECF No. 29) at 11.  Ordinarily, the court cannot consider materials attached to a motion to dismiss unless they are central to the claim and referenced by the complaint, *see Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010), which the Handbook is not.  The court need not decide whether it can consider the Handbook's contents at the motion to dismiss stage, however, because supporting documentation was not necessary to initiate the interactive process for devising a reasonable accommodation.

- 22 -

circumstances, the court can reasonably infer that there could have been an interactive process for devising a reasonable accommodation concerning the Step Examination requirement.

Accordingly, the court declines to dismiss Salamah's Rehabilitation Act claim.

D

The court turns last to Salamah's ADA retaliation claim against Drs. Mihalic and Sachs, in their individual capacities. Defendants maintain that Salamah lacks statutory standing.[20] The court agrees.

Under 42 U.S.C. § 12203(a), it is unlawful to "discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA.]" Persons discriminated against because they opposed a practice made unlawful by Title II of the ADA may seek recourse pursuant to the remedies and procedures available under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq. See* 42 U.S.C. § 12203(c) (cross-referencing 42 U.S.C. § 12133); 42 U.S.C. § 12133 (cross-referencing 29 U.S.C. § 794a); 29 U.S.C. § 794a(b) (cross-referencing Title VI for persons aggrieved by acts by recipients of federal funds). But suits against individuals are not available under Title VI. *See Forte v. Dall. Cnty. Cmty. Coll. Dist.*, 2007 WL 9712189, at *5 (N.D. Tex. Mar. 6, 2007)

---

[20]Statutory "standing" is not jurisdictional, but a "merits question" properly addressed under Rule 12(b)(6). *Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 666 (5th Cir. 2020); *see also Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021) (per curiam); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014).

(Godbey, J.) (collecting cases).

Accordingly, Salamah's ADA retaliation claim against Drs. Mihalic and Sachs under 42 U.S.C. § 12203(b) is dismissed.

IV

Although the court is granting in part defendants' motion to dismiss, it will grant Salamah leave to replead, but only with regard to her Article III constitutional standing to seek an injunction commanding defendants to clarify the reasons for her dismissal from UT Southwestern. Salamah has requested leave to amend, and it is not apparent that this pleading deficiency is entirely incurable. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

\*   \*   \*

For the reasons explained, the court grants in part and denies in part defendants' February 14, 2025 motion to dismiss, denies as moot defendants' February 24, 2025 motion to stay discovery, and grants Salamah leave to replead to the extent specified herein within 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

April 25, 2025.

_____

SIDNEY A. FITZWATER
SENIOR JUDGE

- 24 -